23 November 1999

NO. 4-99-0262

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

DEAN LESSMAN, ) Appeal from

Plaintiff-Appellant, ) Circuit Court of

) Macon County

JAMES E. RHODES and DAVE PARKS, ) No. 97L173

Defendants, )

and ) Honorable

TRAIL RIDERS ASSOCIATION, INC., ) James A. Hendrian,

Defendant-Appellee. ) Judge Presiding.

_________________________________________________________________

JUSTICE COOK delivered the opinion of the court:

In April 1996, plaintiff Dean Lessman was a participant in a horse show sponsored by defendant Trail Riders, Inc. (Trail Riders), in Moweaqua, Illinois.  While Lessman was riding and warming up his horse in the arena, another horse bucked Lessman in the leg just above his left ankle, completely breaking Lessman's tibia and fibula.   Lessman sued Trail Riders, alleging negligence and willful and wanton conduct.  Lessman also sued the rider of the horse that kicked him, Dave Parks, and the owner of the horse that kicked him, James Rhodes.  The defendants filed motions to dismiss, arguing the Equine Activity Liability Act (Act) (745 ILCS 47/1 
et
 
seq
. (West 1998)) only allowed recovery for willful and wanton acts and that Lessman did not allege sufficient facts to meet that standard.  The trial court dis

missed all counts except the willful and wanton action against Trail Riders.

In his complaint, Lessman alleged he was riding a four- year-old female horse (mare), and Parks was riding a two-year-old fertile, male horse (stallion).  About 15 minutes before the incident, Lessman alleged Parks' stallion was acting up by attempting to kick another horse, attempting to have intercourse with another horse, and generally being unmanageable.  Lessman alleged he was unaware of this dangerous behavior and was care

fully and peacefully passing Parks' stallion, when the stallion became uncontrollable, turned and raised its hind legs and bucked Lessman's leg.  Lessman claimed Trail Riders was willful and wanton for (1) not checking into the background of the horses registered for the show; (2) not monitoring the behavior of the horses; (3) not requiring stallions to be shown at separate times and in separate classes from other horses; (4) allowing all horses to be prepared and shown at the same time; and (5) not requiring red ribbons to be placed on the tail of horses that were "kickers," as was the social rule among horse shows.  Lessman alleged stallions were extremely dangerous animals and should be kept separate from other horses at all times.

Trail Riders moved for summary judgment.  Trail Riders argued Lessman failed to prove Trail Riders engaged in inten

tional or reckless conduct.  Trail Riders also claimed it fol

lowed standard procedures in running and organizing the horse show and did not have a duty to check horse backgrounds or show stallions separately.

Lessman responded with an affidavit from Connie Owens, the editor and publisher of the Illinois Horse Network.  Owens claimed she had raised and trained horses and judged horse competitions for several years.  Owens believed Trail Riders should not have shown stallions or should have shown them sepa

rately.  Owens claimed Trail Riders should have taken extraordi

nary safety measures to keep stallions away from the other horses.

Lessman also submitted his discovery deposition and the depositions of Park and Larry Sumpter, Trail Rider's president.  Lessman testified he had been to 10 or 15 different horse shows. Lessman stated that maybe two stallions were at the Trail Riders show, and it was possible that stallions were at the other horse shows he had attended.  Lessman was not aware of any rule disal

lowing stallions from competition, or anyone performing back

ground checks on horses, at any of the horse shows in which he had competed.  Lessman was also unaware of any horse show that required red ribbons to be placed on horses that kicked.  Lessman had seen some horses at other shows with ribbons on their tails.  Lessman believed the owners put them there as part of a "social rule."  Lessman did not know of any employee of Trail Riders that witnessed the accident or the stallion's unruly behavior.

Park testified he had owned about 30 to 40 horses throughout the years and had participated in hundreds of horse shows in several states.  Park never owned a stallion, but had shown a couple in horse shows.  Park had never been to a horse show where stallions were not shown or were shown separately.  Park was not aware of any rule requiring red ribbons to be placed on "kickers" at any of the horse shows he had attended.  Park did not believe a stallion was any more dangerous than a mare or gelding; rather, any horse could kick at any time for any reason.

Sumpter testified he had been to several horse shows in several states.  Sumpter had never seen stallions separated from other horses, except for a "pleasure" contest, which involved riding against the clock.  Sumpter had never seen horses screened in any way and had never heard of a social rule of putting red ribbons on the tails of "kickers."  Sumpter claimed the rule was "you ride what you bring."  Before Lessman's accident, Sumpter and Trail Riders had never considered banning or separating stallions in competitions.  At a meeting after the incident, Trail Riders discussed the idea of separating stallions, and one member had mentioned that some other horse sponsors were starting to do this.  Despite this discussion, the issue was tabled and Trail Riders still does not separate stallions.

The trial court granted summary judgment in favor of Trail Riders.  Lessman appeals, arguing the trial court erred as a matter of law.  
Summary judgment is properly granted when the pleadings, deposi­tions, and affidavits show that no genuine issue of materi­al fact exists and the moving party is entitled to judgment as a matter of law.  735 ILCS 5/2-1005(c) (West 1998); 
Gardner v. Navistar International Transporta­tion Corp.
, 213 Ill. App. 3d 242, 246, 571 N.E.2d 1107, 1110 (1991).  We review the trial court's order of summary judgment under the 
de
 
novo
 stan

dard of review.  
Outboard Marine Corp. v. Liberty Mutual Insur

ance Co.
, 154 Ill. 2d 90, 102, 607 N.E.2d 1204, 1209 (1992).
  The court must strict­ly construe ­the pleadings, deposi­tions, admis

sions, and affida­vits against the movant and liberally in favor of the opponent when determining whether a genuine issue of material fact exists.  
Gatlin v. Ruder
, 137 Ill. 2d 284, 293, 560 N.E.2d 586, 589 (1990).

The stated purpose of the Act is to "encourage equine activities by delineating the responsibilities of those involved in equine activities" and to recognize that "persons who partici

pate in equine activities may incur injuries as a result of the risks involved in those activities."  745 ILCS 47/5 (West 1998).  Section 15 of the Act provides:

"It is recognized that equine activities are hazardous to participants, regardless of all feasible safety measures that can be taken.         Each participant who engages in an equine activity expressly assumes the risk of and legal responsibility for injury, loss, or damage to the participant or the partici

pant's property that results from participat

ing in an equine activity ***."  745 ILCS 47/15 (West 1998).

However, section 20 of the Act provides an exception to the general rule, permitting liability for equine activity sponsors that commit "an act or omission that constitutes willful or wanton disregard for the safety of the participant, and that act or omission caused the injury."  745 ILCS 47/20(b)(4) (West 1998).

"[T]he label 'willful and wanton conduct' has developed in this State as a hybrid between acts considered negligent and behavior found to be intentionally tortious."  
Ziarko v. Soo Line R.R. Co.
, 161 Ill. 2d 267, 275, 641 N.E.2d 402, 406 (1994).  The Local Governmental and Governmental Employees Tort Immunity Act defines "willful and wanton conduct" as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property."  745 ILCS 10/1-210 (West 1998).  The Illinois Pattern Jury Instructions, Civil, also define "willful and wanton conduct" as behavior "which, if not intentional, shows an utter indifference to or conscious disregard" for the safety of others.  Illinois Pattern Jury Instructions, Civil, No. 14.01 (3d ed. 1995).    

W
e conclude that no genuine issue of materi­al fact exists and the trial court properly awarded summary judgment in Trail Rider's favor.  
Lessman's allegation that Trail Riders acted recklessly is not supported by the record.  Judging from the 
pleadings, deposi­tions, and affidavits,
 Trail Riders did not act  differently from any other horse show sponsor.  Lessman has produced no evidence that any equine activity sponsor, in Illi

nois or any other state, conducted background checks into horses, separated or excluded stallions from participating in shows, or required "kickers" to wear ribbons on their tails at the time of Lessman's accident.  Lessman acknowledged he was unaware of any such rules at the 10 to 15 horse shows he had attended.  Park and Sumpter also were unaware of these rules existing at any of the horse shows they attended over the years.  We find the lack of a customary practice of separating or excluding stallions to be a good indication Trail Riders did not act recklessly or with conscious disregard to Lessman's safety.   

Owens' affidavit and its general conclusions do not create a genuine issue of fact as to whether Trail Riders acted in a willful and wanton manner.  Owens merely asserts that "Trail Riders should not have shown stallions or should have shown them separately."  Owens does not allege the standard of care or industry practice is to exclude or separate stallions from competition.  Owens does not bolster her opinion with any factual support.  She does not allege that any horse show sponsor actu

ally excludes or separates stallions.  She states nothing about the necessity of screening horses, instituting background checks, or requiring "kickers" to wear red ribbons on their tails.  Even if we gave Lessman the benefit of the doubt and determined Owens' affidavit created some issue of fact, summary judgment was still proper.  If what is contained in the pleadings and affidavits constitutes all the evidence and upon such evidence nothing would be left to go to the jury, and the court would be required to direct a verdict, then a summary judgment should be entered.  
Fooden v. Board of Governors of State Colleges & Universities
, 48 Ill. 2d 580, 587, 272 N.E.2d 497, 500 (1971).

Our holding is consistent with the intent of the Act.  The very purpose of the Act is to encourage equine activities by protecting equine activity sponsors from excess liability due to horse-related injuries.  The legislature recognized the hazardous and unpredictable nature of riding and showing horses and sought to shift the risk from sponsors to participants except for intentional or reckless behavior.  We find Trail Riders did not act recklessly and Lessman's injury was the type of injury that the legislature contemplated when it placed the assumption of the risk upon participants.  Accordingly, we affirm the trial court's awarding of summary judgment in Trail Riders favor.

Affirmed.  

KNECHT, P.J., and MYERSCOUGH, J., concur.