(text box: 1) NO. 5-03-0404

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________

CONNIE J. SMITH, )  Appeal from the

)  Circuit Court of

     Plaintiff-Appellant,   )  Lawrence County.  

)

v. )  No. 99-L-9

)

GREGORY LANE and TODD LANE, )  Honorable

)  Robert M. Hopkins, 

     Defendants-Appellees. )  Judge, presiding.  

___________________________________________________________________________

JUSTICE CHAPMAN delivered the opinion of the court:

This appeal involves a passenger in a horse-drawn carriage, who was injured when the carriage went off the road and overturned.  The passenger, Connie Smith, brought suit in Lawrence County, Illinois, against the driver of the carriage, Todd Lane, and the owner of the horse and carriage, Gregory Lane.  She alleged both negligence and strict liability under the Animal Control Act (510 ILCS 5/1 
et seq.
 (West 1996)).  The defendants filed a motion pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 1996)) to dismiss the complaint, asserting that the carriage ride was an "equine activity" within the coverage of the Equine Activity Liability Act (745 ILCS 47/1 
et seq.
 (West 1996)), thereby affording them immunity from suit since the plaintiff did not allege willful and wanton misconduct as required by that statute (745 ILCS 47/20(b)(4) (West 1996)).  The defendants further asserted that the Animal Control Act was inapplicable to the facts of the case.  The court determined that the plaintiff had been engaging in an equine activity as defined by the Equine Activity Liability Act, thereby rendering the defendants immune from suit.  Because she had not pled willful and wanton misconduct, the court dismissed the two negligence counts pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 1996)) for the failure to state a claim under the Equine Activity Liability Act.  The court further found that the applicability of the Animal Control Act was preempted by the protection of the Equine Activity Liability Act.  Accordingly, the court dismissed all the counts.  We reverse and remand.

On appeal, the plaintiff argues that the trial court erred in interpreting the language of the Equine Activity Liability Act to bar a passenger in a horse-drawn carriage from bringing a suit for ordinary negligence against the driver and the owner of the horse and carriage.  The plaintiff also contends that the court erred in its determination that the Equine Activity Liability Act preempted the Animal Control Act.

We review 
de novo
 the court's dismissal under either section 2-615 or section 2-619 of the Code of Civil Procedure.  
R-Five, Inc. v. Shadeco, Inc.
, 305 Ill. App. 3d 635, 639, 712 N.E.2d 913, 915 (1999).  

Equine activity liability acts (EALAs) have been enacted in more than 40 states since the mid-1980s.  L. Speziale, Comment, 
Walking Through the New Jersey Equine Activity Liability Statute: A Look at Judicial Statutory Interpretation in Jurisdictions With Similar Limited Liability Laws
, 12 Seton Hall J. Sport L. 65, 68 (2002).  Their intended purpose is to promote equine activities and the horse industry in general by limiting liability for some horse-related activities.  12 Seton Hall J. Sport L. at 68.  The stated purpose of the Illinois Equine Activity Liability Act (the Equine Act), enacted in 1995, is set forth as follows:

"The General Assembly recognizes that persons who participate in equine activities may incur injuries as a result of the risks involved in those activities.  The General Assembly also finds that the State and its citizens derive numerous economic and personal benefits from equine activities.  Therefore, it is the intent of the General Assembly to encourage equine activities by delineating the responsibilities of those involved in equine activities."  745 ILCS 47/5 (West 1996).

In "delineating the responsibilities of those involved in equine activities", the Illinois legislature chose not to encompass every type of equine-related incident.  
Kush v. Wentworth
, 339 Ill. App. 3d 157, 165, 790 N.E.2d 912, 918 (2003); 
Carl v. Resnick
, 306 Ill. App. 3d 453, 458, 714 N.E.2d 1, 4 (1999).  Consequently, only the conduct and activities defined in the various provisions are afforded protection under the statute.  

The primary objective of statutory construction is to ascertain and give effect to the legislature's intent.  
Goff v. Teachers' Retirement System of the State of Illinois
, 305 Ill. App. 3d 190, 192, 713 N.E.2d 578, 580 (1999).  The statutory language is the best indicator of the legislature's intent and must be given its plain and ordinary meaning.  
Goff
, 305 Ill. App. 3d at 192, 713 N.E.2d at 581.  In construing a statute, we must consider the statute as a whole.  
Williams v. Staples
, 208 Ill. 2d 480, 487, 804 N.E.2d 489, 493 (2004).  Our interpretation is constrained, however, when the statute is in derogation of the common law.  "[I]n Illinois, as in the majority of jurisdictions, statutes in derogation of common law are to be strictly construed and nothing is to be read into such statutes by intendment or implication."  
Summers v. Summers
, 40 Ill. 2d 338, 342, 239 N.E.2d 795, 798 (1968).  Our Equine Act is in derogation of the common law, because damages for equine-related injuries had previously been recoverable under a negligence theory.  
Kush
, 339 Ill. App. 3d at 161, 790 N.E.2d at 915 (citing 
Meyer v. Naperville Manner, Inc.
, 285 Ill. App. 3d 187, 191-92, 673 N.E.2d 1079, 1082 (1996)).  To the extent that our statute precludes recovery under negligence law, it must be strictly construed in favor of the plaintiff.  
Kush
, 339 Ill. App. 3d at 161, 790 N.E.2d at 915. 

Thus, we approach the interpretation of this statute keeping in mind both the legislature's intent and the fact that the statute is in derogation of the common law.  We begin our analysis with the language of the statute itself, in an attempt to determine its applicability to the facts before us.  Section 15 of the Equine Act provides in part:

"Each participant who engages in an equine activity expressly assumes the risk of and legal responsibility for injury, loss, or damage to the participant or the participant's property that results from participating in an equine activity, except in the specific situations as set forth in Section 20, when the equine activity sponsor or equine professional may be held responsible."  745 ILCS 47/15 (West 1996).

The term "participant" is defined in section 10(g) as "any person, whether amateur or professional, who engages in an equine activity, whether or not a fee is paid to participate in the equine activity".  745 ILCS 47/10(g) (West 1996).  The phrase "engages in an equine activity" is defined in section 10(a): " 'Engages in an equine activity' means riding, training, assisting in medical treatment of, driving, or being a passenger upon an equine, whether mounted or unmounted, or assisting a participant.  The term 'engages in an equine activity' does not include being a spectator at an equine activity, except in cases where the spectator places himself in an unauthorized area and in immediate proximity to the equine activity."  745 ILCS 47/10(a) (West 1996).

The phrase "equine activity" is defined in section 10(c) as follows:

"(1) Equine shows, fairs, competitions, performances, or parades that involve any or all breeds of equines and any of the equine disciplines, including, but not limited to, dressage, hunter and jumper horse shows, grand prix jumping, 3[-]day events, combined training, rodeos, driving, pulling, cutting, polo, steeplechasing, English and western performance riding, endurance trail riding and western games, and hunting.

(2) Equine training activities, teaching activities, or both.

(3) Boarding equines.

(4) Riding, inspecting, or evaluating an equine belonging to another, whether or not the owner has received some monetary consideration or other thing of value for the use of the equine or is permitting a prospective purchaser of the equine to ride, inspect, or evaluate the equine.

(5) Rides, trips, hunts, or other equine activities of any type however informal or impromptu that are sponsored by an equine activity sponsor.

(6) Placing or replacing horseshoes on an equine."  745 ILCS 47/10(c) (West 1996).

Our Equine Act has come under criticism for less-than-artful drafting.  The lack of clarity has led to a good deal of confusion in interpretation.  
Kush
, 339 Ill. App. 3d at 162-65, 790 N.E.2d at 916-18.  Our task is complicated further by the fact that the term "equine activity" is used in a part of its own definition, creating a circular loop of reasoning.  745 ILCS 47/10(c)(5) (West 1996).  Additionally, it is very difficult to read and apply the sections in an internally consistent manner.  See 
Carl
, 306 Ill. App. 3d at 457, 714 N.E.2d at 3-4.

There are, moreover, no Illinois cases to guide our determination regarding whether a passenger in a horse-drawn carriage falls within the scope of the statutory language.  Even though EALAs have been extant for more than 20 years, there are few cases nationwide interpreting these statutes.  Subsequent to the enactment of our Equine Act in 1995, there have been only three decisions interpreting it.  All three decisions involve actual horseback riding.  
Kush
, 339 Ill. App. 3d at 159, 790 N.E.2d at 913; 
Lessman v. Rhodes
, 308 Ill. App. 3d 854, 855, 721 N.E.2d 178, 179 (1999); 
Carl
, 306 Ill. App. 3d at 455, 714 N.E.2d at 2.  Our research discovered only two state court cases in the nation where a horse-drawn vehicle was in issue: one was brought under a Tennessee EALA almost identical to ours (
Friedli v. Kerr
, No. M1999-02810-COA-R9-CV (Tenn. App. 2001)); the other was brought under a Wisconsin EALA broader in scope (
Kangas v. Perry
, 239 Wis. 2d 392, 620 N.W.2d 429 (Wis. App. 2000)). 

We first note that we agree with a part of the trial court's analysis of the Equine Act–"While section 10(a) defines the requisite relationship to the offending horse which the plaintiff must have for EALA protection to apply, [s]ection 10(c) defines the context in which the horse must be functioning for the EALA to apply."  Other courts have also held that in order for the statute to be internally consistent, these sections must be read in conjunction with one another.  Said another way, unless a "participant" is "engaged in an equine activity" as defined in section 10(a), the defendant is not afforded protection even if the "equine activity" is one defined in section 10(c), or vice versa.  
Carl
, 306 Ill. App. 3d at 457, 714 N.E.2d at 3-4; see also 
Friedli
, slip op. at 3-4 (interpreting Tennessee's EALA in the same manner).

While we agree with the trial court's logic, we disagree with the result it reached in its interpretation of the statutory language.  In determining whether the plaintiff was a "participant" "engaged in an equine activity", the court construed the section 10(a) language "being a passenger upon an equine, whether mounted or unmounted", to include being a passenger in a horse-drawn carriage.  We find this construction strained.  While we believe that the phrase "passenger upon an equine, whether mounted or unmounted", could be descriptive of a horseback rider in the process of mounting or unmounting a horse, the plain meaning of "upon an equine", which we believe "mounted or unmounted" modifies, would not include a passive passenger in a horse-drawn vehicle.  

We agree with the interpretation the Tennessee Court of Appeals gave the same language involving the same factual scenario: "In this context, the only sensible construction of the words 'mounted or unmounted' [in the statute] is that they modify the preceding phrase 'being a passenger upon an equine.'  They cannot reasonably be construed to create a separate category of activities that constitute engaging in an equestrian activity."  
Friedli
, slip op. at 5 n.8.  The court further explained its rationale:

"As we understand the definition of 'participant,' being a participant requires actually riding on the equine or, at least, having some control over the equine.  Apart from participants who are 'upon' an equine, all the activities included in the statutory definition of 'engages in an equine activity' appear to require some ability to control the animal.  From a policy perspective, coupling proximity and ability to control in the definition of 'engages in an equine activity' is consistent with the principle that it would be unfair to truncate negligence claims by persons with no ability to protect themselves from injury."  
Friedli
, slip op. at 5.  

In 
Friedli
, brought under a statute almost identical to ours, the Tennessee Court of Appeals held that a passenger in a horse-drawn carriage who was injured when the carriage overturned was not "engaging in an equine activity" and consequently was not an equine activity "participant" as defined by the statute.  It further held that the defendant's carriage business was not an "equine activity" and that the defendant was not an "equine activity sponsor" under the statute.  
Friedli
, slip op. at 5.

In our case, as in 
Friedli
, it was the driver who had the ability to control the equine; the passenger clearly did not.  This interpretation also gives meaning to section 15, titled "Participant's responsibility", which provides as follows:

"Each participant shall have sole individual responsibility for knowing the range of his or her own ability to manage, care for, and control a particular horse or perform a particular equine activity, and it shall be the duty of each participant to act within the limits of the participant's own ability, to maintain reasonable control of the particular horse or horses at all times while participating in an equine activity, to heed all posted warnings, to perform equine activities only in an area or in facilities designated by the horseman, and to refrain from acting in a manner that may cause or contribute to the injury of anyone."  745 ILCS 47/15 (West 1996).

The above section only has meaning if the participant has some ability to control the equine activity.  Again, while we believe the section is relevant with respect to the driver of a horse-drawn vehicle, its meaning bears no rational relevance to a passive passenger.

Equine "driving" is a term of art generally used to describe the activity of an individual controlling the movement of an equine harnessed to a nonmotorized vehicle, such as a carriage.  4 The New Encyclopedia Britannica 228 (15th ed. 2003).  The "driver" refers to the person controlling the movement of the horse, by means of "driving reins" attached to the horse's bit.  See Webster's New Universal Unabridged Dictionary 558 (2d ed. 1983) (Webster's).  Webster's defines the word "drive" as "to control the movement or direct the course of".  Webster's at 557.  Webster's defines "driver" as "one who drives an automobile, horse, locomotive, etc."  Webster's at 557.  Black's Law Dictionary defines "driving" as "To urge forward under guidance, compel to go in a particular direction, urge onward, and direct the course of".  Black's Law Dictionary 495 (6th ed. 1990).  As this word is commonly used and understood, "driving" connotes the actions of the person controlling the movement of the equine and not the actions of a passive passenger. 

With respect to the driver of a horse-drawn vehicle, it is clear that the legislature intended that he or she could be considered a "participant"–"any person *** who engages in an equine activity" (745 ILCS 47/10(g) (West 1996))–because the term "driving" is included in the section 10(a) definition of "engages in an equine activity".  (We also note that "driving" is included as well in the section 10(c) definition of "equine activity", but only in the context of "equine shows, fairs, competitions, performances, or parades", none of which is applicable to the facts in issue here.) 

Furthermore, if the legislature had intended that the statute apply to passengers in horse-drawn vehicles, it would have been a simple matter to so specify.  The Wisconsin EALA, for example, clearly includes passengers in horse-drawn vehicles.  Wisconsin's statute provides: " 'Equine activity' means any of the following:  ***  Riding, training[,] or driving a vehicle pulled by an equine or 
being a passenger on a vehicle pulled by an equine
."  (Emphasis added.)  Wis. Stat. §895.481(1)(b)(6) (2004).   

The defendants cite 
Kangas
, a case brought under the Wisconsin statute, in support of their position.  One of the plaintiffs in 
Kangas
 was a passenger who was injured when she fell off a horse-drawn sled.  
Kangas
, 239 Wis. 2d at 396, 620 N.W.2d at 431.  However, unlike our case, the issue before the court was not whether the plaintiff was engaged in a protected equine activity (as clearly she was under the plain language of the statute) but rather whether the defendants were within the class of individuals entitled to immunity, which the court answered affirmatively.  
Kangas
, 239 Wis. 2d at 400, 620 N.W.2d at 433.  Because there is no language in our statute that is remotely similar to that found in the Wisconsin statute, we find the Wisconsin case of little value in deciding our case.  Moreover, unless we find that the plaintiff was "engaging in an equine activity", it is not necessary for us to determine whether the defendants are in the class of individuals afforded protection by the statute. 

In sum, we do not find that the plaintiff was "engaged in an equine activity", as defined by our Equine Act, at the time of her injury, and therefore, her complaint was not barred by the Equine Act.  Accordingly, we reverse the court's dismissal of counts I and III.

Having found that the plaintiff was not "engaged in an equine activity", as defined in section 10(a), we do not find it necessary to address her additional argument that the activity was not an "equine activity" as defined in section 10(c).  Nor is it necessary for us to determine whether either defendant was an "equine activity sponsor" or "equine professional" under the Equine Act or whether, as the plaintiff contends, "equine activity sponsors" and "equine professionals" are the only persons entitled to protection under the Equine Act.  (The Second District Appellate Court has recently held that the Equine Act does not preclude negligence liability for persons other than equine activity sponsors and equine professionals.  
Kush
, 339 Ill. App. 3d at 165, 790 N.E.2d at 918.)

We now turn to the plaintiff's related argument that the trial court improperly dismissed the counts brought under the Animal Control Act.  We agree with the plaintiff. 

The court dismissed the plaintiff's two counts brought under the Animal Control Act as a result of its ruling that the Equine Act applied to the facts of the case.  Relying on
 Carl v. Resnick
, the court concluded that the Animal Control Act was preempted by the Equine Act.  See 
Carl
, 306 Ill. App. 3d at 459, 714 N.E.2d at 5.  The trial court stated in its ruling that because the Animal Control Act was preempted, it was unnecessary to consider the sufficiency of the complaint to state a cause of action under the Animal Control Act.  See 
Carl
, 306 Ill. App. 3d at 459, 714 N.E.2d at 5.  We agree that had the Equine Act applied to the facts of the case, preemption would have barred an action for the same alleged injuries under the Animal Control Act.  See 
Carl
, 306 Ill. App. 3d at 459, 714 N.E.2d at 5.  However, because we have reversed the trial court's ruling on the applicability of the Equine Act, we now consider whether the Animal Control Act remains a viable cause of action for the plaintiff.  See 
Carl
, 306 Ill. App. 3d at 459, 714 N.E.2d at 5.

Under count II of her complaint, against Todd Lane, the plaintiff pled, in relevant part, as follows: 

"3.  On or about September 13, 1997, the plaintiff, Connie Smith, was a passenger on a horse and carriage ride being operated by the defendant, Todd Lane, Sumner, Lawrence County, Illinois, and at all times was peaceably conducting herself and was lawfully in the carriage at issue.

4.  On or about September 13, 1997, in Sumner, Lawrence County, Illinois, the horse and carriage being operated by Todd Lane went off of the road[]way and flipped.

5.  As a direct and proximate result of the above[-]mentioned occurrence, the plaintiff, Connie Smith, suffered injuries ***.

6.  There existed at the time of the occurrence a statute known as The Animal Control Act [(510 ILCS 5/16 (West 1996))], which states in part that 'if a dog or other animal, without provocation, attacks or injures any person who is peaceably conducting himself in any place where he may lawfully be, the owner of such dog or other animal is liable in damages to such person for the full amount of the injury sustained'.

7.  Pursuant to the above[-]mentioned Act, Todd Lane would be considered an owner for purposes of the Act ***.

8.  At all times the horse in this matter was unprovoked."

Count IV was identical to count II, except that it was lodged against Gregory Lane as an owner but not the operator of the carriage. 

In order to recover under the Animal Control Act, the plaintiff must prove four elements: "(1) an injury caused by an animal owned by the defendant; (2) lack of provocation; (3) the peaceable conduct of the injured person; and (4) the presence of the injured person in a place where he has a legal right to be."  
Meyer v. Naperville Manner, Inc.
, 262 Ill. App. 3d 141, 147, 634 N.E.2d 411, 415 (1994).  When reviewing a dismissal of a complaint for the failure to state a cause of action, we accept all well-pleaded facts and inferences as true.  We interpret the allegations in the complaint in a light most favorable to the plaintiff.  
Bea v. Bethany Home, Inc.
, 333 Ill. App. 3d 410, 413, 775 N.E.2d 621, 623 (2002).

As evidenced in the above excerpts of the plaintiff's complaint, she has clearly pled facts alleging all the necessary elements to support a recovery under the Animal Control Act.  Notwithstanding, while a plaintiff need not prove negligence under the Animal Control Act, the courts have not construed the Animal Control Act to impose strict liability.  
Meyer
, 262 Ill. App. 3d at 147, 634 N.E.2d at 415.  Guided by policy considerations of public protection, the courts examine the circumstances of a case to determine whether there is a reasonable and factual basis to impose liability.  
Meyer
, 262 Ill. App. 3d at 148, 634 N.E.2d at 415.  

The defendants contend that the facts in this case are outside the scope of the Animal Control Act.  We believe, however, that the defendants' contentions and arguments are more appropriate to a summary judgment (735 ILCS 5/2-1005 (West 1996)) than a dismissal for the failure to state a cause of action (735 ILCS 5/2-615 (West 1996)).  In relevant point, most of the cases relied on by the defendants involve summary judgments 
after
 some amount of development of the facts–depositions, interrogatories, admissions, affidavits–providing a basis for defeating the claims as a matter of law.  
Harris v. Walker
, 119 Ill. 2d 542, 545, 519 N.E.2d 917, 918 (1988); 
Garcia v. Nelson
, 326 Ill. App. 3d 33, 35-36, 759 N.E.2d 601, 604 (2001); 
Carl
, 306 Ill. App. 3d at 455, 714 N.E.2d at 2; 
Meyer
, 262 Ill. App. 3d at 143-44, 634 N.E.2d 412-13.  The only facts before us are those contained in the allegations of the complaint, and we draw all reasonable inferences in favor of the plaintiff.  Without more information, we are unable to determine whether there are factual circumstances that might exclude the plaintiff from the class of persons to be protected by the Animal Control Act.  

We find that at the pleading stage the plaintiff has alleged facts sufficient to state a cause of action under the Animal Control Act.  We therefore reverse the trial court's dismissal of counts II and IV of the complaint.

The judgment of the circuit court is reversed, and the cause is remanded.

Reversed; cause remanded.

HOPKINS and KUEHN
(footnote: 1), JJ., concur.

                                      

FOOTNOTES
1:
Justice Kuehn fully participated in this decision prior to the expiration of his term on the court.  See 
Cirro Wrecking Co. v. Roppolo
, 153 Ill. 2d 6, 605 N.E.2d 544 (1992).

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 07/13/05.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.