ALICIA MEYER, a Minor, by John Meyer *et al.*, her Parents and Next Friends, Plaintiffs-Appellants, v. NAPERVILLE MANNER, INC., Defendant-Appellee.

Second District   No. 2—93—0109

Opinion filed May 17, 1994.

Douglas W. Graham, of Chicago, for appellant.

Martin A. Kanofsky, Alan J. Brinkmeier, and Joseph R. Ramos, all of Merlo, Kanofsky, Brinkmeier & Douglas, Ltd., of Chicago, and Henry B. Vess III, of Dommermuth, Brestal, Cobine & West, Ltd., of Naperville, for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

The minor plaintiff, Alicia Meyer, appeals from the trial court's grant of summary judgment in favor of defendant, Naperville Manner, Inc. We affirm in part, reverse in part and remand.

On March 18, 1992, plaintiff filed her original complaint at law through her parents and next friends, John and Eileen Meyer. The complaint alleged that, as a riding student of defendant, she sustained injuries when riding a horse owned by defendant on October 6, 1991. The action was initially brought pursuant to section 16 of the Animal Control Act (Animal Control Act or Act), which provides:

> "If a dog or other animal, without provocation, attacks or injures any person who is peaceably conducting himself in any place where he may lawfully be, the owner of such dog or other animal is liable in damages to such person for the full amount of the injury sustained." 510 ILCS 5/16 (West 1992).

After the trial court granted plaintiff's motion to strike certain affirmative defenses interposed by defendant, plaintiff was given leave to file an amended complaint on January 12, 1993. In it, plaintiff added a second count sounding in common-law negligence alleging that defendant (1) failed to warn plaintiff that the riding technique she had previously learned at another school was dangerous to use with defendant's horses; (2) plaintiff was promoted from "beginner" through "advanced" when she had not safely learned to manage defendant's horses; and (3) defendant entrusted the safety of its child students to a 17-year-old instructor who had no training or instruction in teaching and no prior teaching experience.

Defendant interposed three affirmative defenses to the original complaint. First, plaintiff's mother, Eileen Meyer, signed a waiver or release of liability on behalf of Alicia which acted as a complete bar to plaintiff's statutory cause of action. Second, plaintiff was contributorily negligent. Third, the Act did not cover injuries sustained by renters of horses or students taking horseback riding lessons. Plaintiff moved to strike the affirmative defenses, arguing, in part, that a parent has no right to waive or release a minor child's cause of action without judicial approval. In opposing plaintiff's motion to strike its affirmative defenses, defendant relied in part on *Harris v. Walker* (1988), 119 Ill. 2d 542, which held under the circumstances in that case that a person who rents a horse and understands and expressly accepts the risks of using the horse cannot recover for damages under section 16 of the Act.

On July 28, 1992, the trial court denied plaintiff's motion to strike without prejudice the first affirmative defense asserting the signed release as a complete bar to the action; the court stated that it needed to have more factual information. The court denied plaintiff's motion to strike the third affirmative defense that the Animal Control Act did not support plaintiff's cause of action. The second affirmative defense of contributory negligence was stricken since at that time only a statutory claim, rather than a negligence claim, was before the court.

After further discovery, including the depositions of plaintiff and her mother, defendant filed a motion for summary judgment arguing that the Animal Control Act has been construed narrowly and does not impose strict liability upon defendant, particularly where a plaintiff rents a horse and signs a waiver of liability as in *Harris*. Defendant further argued that plaintiff voluntarily assumed the risk of injury where she took horseback riding lessons and her mother signed the waiver of liability. In support of its position, defendant also relied on *Ennen v. White* (1992), 232 Ill. App. 3d 1061 (where person accepts

responsibility for controlling animal, she cannot recover for injuries sustained in failing to control animal; Act does not extend protection to rider of a horse).

The parties stipulated that defendant's motion for summary judgment would apply to the amended complaint; plaintiff stood on the arguments made with respect to the affirmative defenses. On January 12, 1993, the court granted summary judgment in favor of defendant, and plaintiff brought this timely appeal.

The deposition included in the record establishes that Alicia, who was 10 years old at the time of her deposition, began taking horseback riding lessons when she was seven. She first began taking weekly lessons at High Style Stables, which later became the Black Medina Horse Troop. She had frequently been riding with her Aunt Annie. Alicia took lessons regularly from High Style Stables for about two years—until she was nine years old. After a hiatus of several months, she took lessons for two more months and then went to Naperville Manner. At High Style, she moved from beginner to the intermediate level, where she learned to canter, which she explained was a fast pace just before the horse went into a gallop, the fastest pace. Alicia explained the movements of the horse's legs at the different speeds, the signals used to control the horse from left to right, and the positions of the rider and her legs used in controlling the horse.

At Naperville, there were several levels of instruction: beginner flat (flat surface), intermediate flat, advanced flat, and beginner over fences. Alicia attended lessons weekly. When she began there, she explained that she had previously been in a higher group of intermediate students. Defendant asked Alicia to demonstrate a walk, a trot, and possibly a canter, and then a figure "8" and a half-circle. She began riding at Naperville in the spring or early summer and rode a horse named Dudley until her first show at the end of June. She then rode a horse named Kissey and had been riding at Naperville for two or three months before the accident. She began there as a beginner and, after one week, entered the intermediate flat class because she knew her "diagonal" position in riding a horse around the arena. Alicia moved up to the advanced level in her second month, and she fell off the horse in her last week at the advanced level. She was to start beginner over fences the following week.

On October 6, the day she was injured, Alicia began riding a horse named Skippy whom she had been told was usually a calm horse. The lesson was inside an indoor arena and the class was preparing for a show at the stable. They were to practice walking, trotting, and cantering. She began by performing a sitting trot, then a walk, and after the instructor commented, performed a posting

trot. At the time of the incident, Alicia had progressed to a "two-point trot" in which the student rides the horse and leans forward in a "jump" position. She had been doing the two-point trot for about $1^1/_2$ to 2 months.

There were five or six students riding around the perimeter of the arena in a counterclockwise direction while the instructor stood in the middle of the arena. Skippy had been "pretty fidgety" during the class and then they passed a heater bolted to a corner of the arena. Alicia stated that sometimes "horses get nervous like that, but he was really, really nervous." Every time they passed the heater he got worse because it was "pretty noisy." The lesson had been going on for about 15 minutes when the accident occurred. Ann, the instructor, kept telling Alicia to stop the horse from prancing away from the wall. The two-point trot was slower than a canter. To keep the horse toward the wall, Alicia would put pressure on the inside or left leg. She tried to keep the horse close to the wall by pulling the reins a little toward the right. According to Alicia, the horse was going a little faster than he should have been and "kept trying to pull the reins" out of her hands. She held him back until they got to the heater, "and he just bolted."

The instructor sometimes had to remind Alicia, as well as the class, to keep her heels down in order to maintain the proper balance and to prevent her feet from coming out of the stirrups. The instructor told Alicia about three times to slow the horse down and pull in the reins. Just before the horse bolted, Alicia was up in the saddle and leaning forward. The horse went from a trot to a gallop. Every time Alicia shortened the reins, Skippy yanked forward. He went around the arena faster than he should have about four or five times before he bolted the second time near the heater and Alicia fell to the ground. She landed on her left side, injuring herself. Alicia had fallen off of a horse a couple of times before taking classes at Naperville.

When Alicia began classes at defendant's riding school, her mother Eileen signed a waiver of liability dated May 2, 1991, which stated in pertinent part:

> "I, as parent and guardian of the rider named above, do hereby waive any and all claims for personal injury or property damage suffered by me or my child *** against Naperville Manner, Inc. doing business as Naperville Equestrian Center, *** arising out of or incident to, but not limited to, riding lessons, horse rental, horse shows or events, equipment, Naperville Equestrian Center horses, *** pleasure rides or other equestrian activity ***. Riders are encouraged by Naperville Equestrian Center to carry sufficient medical and accident insurance."

On appeal, plaintiff first argues that parents have no legal authority to release, waive, or compromise their child's legal right of action by signing such a waiver without court approval. Plaintiff relies on *Mastroianni v. Curtis* (1979), 78 Ill. App. 3d 97. We agree that in the case at bar the parent's waiver of liability was ineffective to bar her minor child's cause of action against defendant.

In *Mastroianni*, in construing a provision of the Illinois Probate Act then in effect concerning the power of a guardian to compromise a ward's claim, the court held that court approval was required to give effect to the parents' release and settlement of their child's claim for negligence. In reaching its decision, the *Mastroianni* court observed that a parent has no legal right, by virtue of the parental relationship, to settle a minor's cause of action, and even if the trial court recognized the plaintiff's parent as a guardian, it would still have to approve a settlement agreement. *Mastroianni*, 78 Ill. App. 3d at 100, citing *Pittsburg, Cincinnati, Chicago & St. Louis Ry. Co. v. Haley* (1897), 170 Ill. 610, 613; see also *Paskewie v. East St. Louis & Suburban Ry. Co.* (1917), 281 Ill. 385, 388-89.

■ The rule applied in *Mastroianni* is well established in the decisions of many jurisdictions. It is now the general rule that, in the absence of statutory or judicial authorization, a parent cannot waive, compromise, or release a minor child's cause of action merely because of the parental relationship. (*Scott v. Pacific West Mountain Resort* (1992), 119 Wash. 2d 484, 493, 834 P.2d 6, 11 (and cases cited therein); 59 Am. Jur. 2d *Parent & Child* § 40, at 183 (1987); 67A C.J.S. *Parent & Child* § 114, at 469 (1978); see, *e.g.*, *Gomez v. Maricopa County* (1993), 175 Ariz. 469, 857 P.2d 1323; *Walker v. Stephens* (1982), 3 Ark. App. 205, 626 S.W.2d 200; *Burge v. City & County of San Francisco* (1953), 41 Cal. 2d 608, 262 P.2d 6; *Gordon v. Agaronian* (1957), 10 Misc. 2d 650, 171 N.Y.S.2d 131; *Julian v. Zayre Corp.* (1978), 120 R.I. 494, 388 A.2d 813.) This rule has also been extended to render ineffective releases or exculpatory agreements for future tortious conduct by other persons where such releases had been signed by parents on behalf of their minor children. See, *e.g.*, *Doyle v. Bowdoin College* (Me. 1979), 403 A.2d 1206, 1208 n.3; *Fitzgerald v. Newark Morning Ledger Co.* (1970), 111 N.J. Super. 104, 267 A.2d 557; *Rogers v. Donelson-Hermitage Chamber of Commerce* (Tenn. Ct. App. 1990), 807 S.W.2d 242; *Scott v. Pacific West Mountain Resort*, 119 Wash. 2d 484, 834 P.2d 6.

Since a parent generally may not release a minor child's cause of action after an injury, there is no compelling reason to conclude that a parent has the authority to release a child's cause of action prior to the injury. (*Scott*, 119 Wash. 2d at 494, 834 P.2d at 11-12.) The policies

served include the protection of minor children where parents may be unwilling or unable to provide for a seriously injured child (*Scott*, 119 Wash. 2d at 494, 834 P.2d at 12) and the prevention of conflicts of interest between the parent and child (*Fitzgerald*, 111 N.J. Super. at 107, 267 A.2d at 558-59).

■ We hold that this rule extends to the case at bar to render ineffective the release or waiver of liability signed by the parent before the minor child's cause of action accrued. Since the parent's waiver of liability was not authorized by any statute or judicial approval, it had no effect to bar the minor child's (future) cause of action, although it appears to be effective to bar the parent's own cause of action.

Defendant has found a California appellate case which held that a release signed by both the parent and the child prior to her participation in a high school activity was not void as against public policy. (*Hohe v. San Diego Unified School District* (1990), 224 Cal. App. 3d 1559, 274 Cal. Rptr. 647.) In arriving at its decision, the *Hohe* court construed a California statute regarding the disaffirmance of contracts by minors so as not to prevent a parent from contracting on behalf of the child. The court relied on *Doyle v. Giuliucci* (1965), 62 Cal. 2d 606, 401 P.2d 1, 43 Cal. Rptr. 697. However, *Doyle* concluded that a contract between a child's father and a medical group for health care, which provided for the arbitration of claims, was binding on the child where arbitration awards had sufficient safeguards for the minor such as judicial review. *Hohe*, of course, is not binding authority on this court. Indeed, it even appears to conflict with prior California law (*cf. Burge v. City & County of San Francisco* (1953), 41 Cal. 2d 608, 262 P.2d 6 (without statutory authority a parent cannot compromise or release his child's cause of action)). We find *Hohe* both inapplicable and unpersuasive under the circumstances presented.

■ We next consider whether the minor plaintiff has a cause of action under the Animal Control Act (510 ILCS 5/16 (West 1992)). In order to recover under the Act, the plaintiff must prove four elements: (1) an injury caused by an animal owned by the defendant; (2) lack of provocation; (3) the peaceable conduct of the injured person; and (4) the presence of the injured person in a place where he has a legal right to be. (*Forsyth v. Dugger* (1988), 169 Ill. App. 3d 362, 365.) A plaintiff need not prove a defendant's negligence under the Act, but neither does it impose absolute or strict liability on animal owners. (*Vanderlei v. Heideman* (1980), 83 Ill. App. 3d 158, 161-62.) However, the Act did eliminate the common-law requirement that the victim prove the owner knew the animal had a vicious propensity.

(*Ennen v. White* (1992), 232 Ill. App. 3d 1061, 1064.) The primary aim of the Act is to encourage tight control of animals for the protection of the public, but the courts require a factual and reasonable basis to impose liability. *Wilcoxen v. Paige* (1988), 174 Ill. App. 3d 541, 543.

Injuries are ordinarily actionable under the Act where the plaintiff is an innocent bystander when injured by an animal. (*Ennen*, 232 Ill. App. 3d at 1065.) However, as exemplified in *Harris v. Walker* (119 Ill. 2d at 547), courts have increasingly looked at the relationship of the plaintiff to the owner of the animal in determining whether the plaintiff is in the class of persons to be protected by the Act. *Ennen*, 232 Ill. App. 3d at 1065.

In *Harris*, our supreme court stated:

"[T]he legislature intended only to provide coverage under the statute for plaintiffs who, by virtue of their relationship to the owner of the dog or other animal or the lack of any such relationship, may not have any way of knowing or avoiding the risk that the animal poses to them. This interpretation is consistent with the emphasis the statute places on lack of provocation and plaintiff's peaceable conduct ***." *Harris*, 119 Ill. 2d at 547.

In *Harris*, the plaintiff, who had signed an exculpatory agreement, rented a horse from defendant's stable and claimed to understand and accept the risks of horseback riding fully. By establishing this relationship, the plaintiff took himself out of the class of persons the statute was intended to protect. The court held that, under the Act, "where a person rents a horse and understands and expressly accepts the risks of using the horse, he cannot recover damages from the person who rented the horse to him." *Harris*, 119 Ill. 2d at 547-48.

By extension, courts have also looked to the plaintiff's relationship with the animal and, in several cases, have concluded that, where a person accepts responsibility for controlling an animal, he or she cannot recover for injuries sustained in failing to control it. See, *e.g.*, *Ennen*, 232 Ill. App. 3d at 1066, relying on *Wilcoxen*, 174 Ill. App. 3d at 543 (where a person accepts responsibility for controlling an animal, she cannot maintain a cause of action for injuries resulting from her own failure to control the animal); accord *Swierkosz v. Starved Rock Stables* (1993), 239 Ill. App. 3d 1017 (relying on *Harris* and *Ennen*, court concluded plaintiff had no claim under the Act where she was thrown from a horse she voluntarily mounted even if the exculpatory agreement was ambiguous and even assuming her inexperience prevented her from a meaningful understanding of the risks of horseback riding).

Thus, in *Hassell v. Wenglinski* (1993), 243 Ill. App. 3d 398, the court, relying in part on *Ennen* and *Wilcoxen*, held that a plaintiff

who was employed to care for defendant's mother in the defendant's home and agreed to walk defendant's dogs as a favor to defendant had no right to recover under the Act since she voluntarily placed herself in the position of an "owner" under the Act by voluntarily accepting responsibility for controlling the animal. The presence of a contractual agreement was not essential to the court's decision; the plaintiff voluntarily assumed care and custody of the dogs as a favor to the defendant and she was injured while exercising that control.

While we recognize that the assumption of risk is a strong underlying theme in these decisions (as expressed particularly in *Harris*), it is evident that the plaintiffs were also not held in the class of persons protected by the Act because, in assuming control of the animal, they could no longer be realistically viewed as innocent bystanders who have in no way provoked the animals. Alternatively, it can be said that one who voluntarily assumes control of the animal places himself in the position of the owner. In *Forsyth v. Dugger* (169 Ill. App. 3d 362), the court observed that an unintentional act of another person could constitute provocation within the meaning of the statute. The court said that the "purpose of the statute, other than simplifying plaintiff's proof, is to require an animal owner to be responsible for injuries caused by his animal when that animal is acting under its own volition. Thus, if an outside stimulus causes the injury-causing behavior in the animal, no liability attaches." *Forsyth*, 169 Ill. App. 3d at 366.

In *Forsyth*, a 15-year-old plaintiff riding a horse was injured when one of the defendants, Dugger, his companion, jumped onto the plaintiff's horse intending to ride double. In response to the mounting, the horse moved forward several steps under a tree. A branch struck Dugger, who pulled plaintiff off the horse as he fell, and plaintiff was injured. The reviewing court concluded that it was immaterial whether the horse was spooked because the horse took those steps as a result of Dugger's jumping on its back. Since the injury-causing behavior of the horse was in reaction to Dugger's jumping onto him, the horse's conduct was found to be provoked, even though unintentionally, and plaintiff was not entitled to recovery under the statute. The *Forsyth* court affirmed the order granting defendants' motion for summary judgment.

We observe too that a determination of provocation does not depend on the subjective intent of the plaintiff, nor does the plaintiff's status as a minor relieve a plaintiff of all responsibility for a provoking act. (*Nelson v. Lewis* (1976), 36 Ill. App. 3d 130, 133-34 ($2\frac{1}{2}$-year-old was held to have unintentionally provoked dog and could not recover for injuries where dog's response was not vicious).)

The cases we have considered do not appear to have differentiated between the conduct of a minor and that of an adult in determining whether recovery will be allowed under the Act, and the Act is silent in this respect.

■ In the case at bar, the minor plaintiff voluntarily assumed control of the horse, placing herself in the position of the owner. It is clear that she was an experienced rider when she undertook to ride the horse. Our review of *Hassell, Swierkosz, Ennen,* and *Wilcoxen* persuades us that because plaintiff mounted and voluntarily assumed control of the horse, she cannot recover for injuries sustained in failing to control it. Objectively, she cannot be considered an innocent bystander or a person within the class of persons protected by the Act. As the cited cases have shown, our decision does not rest merely on plaintiff's subjective knowledge and intent in assuming and appreciating the risk, whether express or implied. (For a discussion of assumption of risk, see *Guthrie v. Zielinski* (1989), 185 Ill. App. 3d 266, 271-72; *Duffy v. Midlothian Country Club* (1985), 135 Ill. App. 3d 429, 432-37; and *Vanderlei v. Heideman* (1980), 83 Ill. App. 3d 158, 162-63.) Rather, it is based on the fact of plaintiff's relationship to the owner and to the animal itself which relationship objectively excludes her from the protected class.

We therefore agree in principle with *Ennen's* conclusion:

"There is no legal or policy justification for extending the protection of the Act to a *rider* of a horse. Once the rider mounts the horse, the rider is no longer a bystander or observer but is someone who has asserted dominion over the animal and is an active partner with the animal in recreational activity. The rider assumes control and responsibility for the horse. While a cause of action may be stated under other theories of liability, there is none under the Act." (Emphasis in original.) *Ennen,* 232 Ill. App. 3d at 1066.

Summary judgment may be granted when the pleadings, depositions, and admissions, together with any affidavits, show there is no genuine issue as to a material fact and that the movant is entitled to judgment as a matter of law. (*Forsyth v. Dugger,* 169 Ill. App. 3d at 365.) In the present case, the trial court was first asked to determine whether the waiver of liability signed by the parent was a bar to the minor plaintiff's cause of action. We have determined, as a matter of law, that the waiver was ineffective as to any cause of action the child might have; the court's ruling was erroneous to the extent it was made on that basis. Next, the court was asked to determine whether plaintiff had a cause of action under the Animal Control Act. We agree with the trial court that, as a matter of law, under the

circumstances presented the minor plaintiff cannot recover under the Act. On that basis, the trial court was correct in granting summary judgment against plaintiff as to count I.

■ Plaintiff also maintains on appeal that the parent's waiver or release was ineffective to bar a cause of action sounding in common-law negligence pleaded in count II of the amended complaint. The court made no explicit ruling as to the negligence count, and the order contains a finding of appealability under Supreme Court Rule 304(a) which ordinarily permits appeals of separate causes of action where there are multiple claims. (134 Ill. 2d R. 304(a).) It is possible that the trial court found that the signed waiver barred all claims. The order appears to grant summary judgment as to the entire complaint. We have concluded that the waiver was ineffective, but we are uncertain whether count II was disposed of on the basis of the waiver barring the negligence claim. To the extent that the judgment may have disposed of count II on an incorrect basis, we believe it should be reversed and the cause should be remanded for further proceedings. On remand, plaintiff may pursue her negligence claim to the extent that she can properly plead and prove it. (See, *e.g.*, *Ennen*, 232 Ill. App. 3d at 1067; *Forsyth*, 169 Ill. App. 3d at 367.) Defendant may raise any appropriate defense, affirmative or otherwise. We express no views regarding the merits of the count sounding in negligence, and the trial court may begin anew as to this count.

The judgment of the circuit court is affirmed in part and reversed in part, and the cause is remanded for further proceedings.

Affirmed in part; reversed in part and remanded.

INGLIS, P.J., and DOYLE, J., concur.