974 So.2d 1112 (2008)
Steven APPLEGATE and Suzanne Applegate, etc., Appellants,
v.
CABLE WATER SKI, L.C., d/b/a Orlando, etc., Appellee.
No. 5D07-458.
District Court of Appeal of Florida, Fifth District.
January 4, 2008.
Order Granting Certification February 22, 2008.
Robert E. Bonner of Meier, Bonner, Muszynski, O'Dell & Harvey, P.A., Orlando, for Appellants.
Lindsey C. Brock, III, and Deborah R. Reid of Rumrell, Costabel, Warrington & Brock, LLP, Jacksonville, for Appellee.
TORPY, J.
In this personal injury case, the issue we confront is whether a contract containing an exculpatory clause, signed by a parent on behalf of her child, in favor of a commercial enterprise, is enforceable to defeat the child's action to recover for personal injuries sustained by the child as a result of the enterprise's negligence. Concluding that the contract is not enforceable, we align ourselves with all of the other courts that have weighed in on this precise issue.[1]
*1114 Five-year-old Jessica Applegate was injured when she fell while she was being pulled on a wakeboard by water ski cable at a camp operated by Appellee. She was struck by the wakeboard of the next customer on the cable. Appellants filed a complaint alleging that Appellee negligently caused injury to Jessica by failing to maintain its premises in a reasonably safe manner, failing to implement appropriate safety procedures, failing to train its employees, failing to properly staff its facility, and negligently designing the water ski cable system. In addition to seeking damages for Jessica's injuries, Jessica's parents sought damages for loss of services, society and affection of their minor child. Based on an exculpatory contract signed by Jessica's mother, on behalf of Jessica and both parents, the trial court granted summary judgment, ruling that the contract unambiguously waived the claims.
This appeal was timely filed and is directed to the limited question of whether the contract is enforceable as it relates to the claims of Jessica. Appellants do not challenge the enforcement of the contract as it relates to the claims of Jessica's parents, so that aspect of the final judgment is affirmed.
Exculpatory contracts are, by public policy, disfavored in the law because they relieve one party of the obligation to use due care and shift the risk of injury to the party who is probably least equipped to take the necessary precautions to avoid injury and bear the risk of loss. Cain v. Banka, 932 So.2d 575, 578 (Fla. 5th DCA 2006). Nevertheless, because of a counter-vailing policy that favors the enforcement of contracts, as a general proposition, unambiguous exculpatory contracts are enforceable unless they contravene public policy. Id.; Ivey Plants, Inc. v. FMC Corp., 282 So.2d 205, 208 (Fla. 4th DCA 1973); Restatement (Second) of Torts § 496B.
Appellants concede that the contract at issue here is unambiguous but urge that the general rule should give way to an overriding public policy of protecting children from damages caused by negligently imposed injuries.[2] This argument finds considerable support in the decisional law across the country. See supra note 1. We are persuaded by some of the reasoning advanced by these authorities and also offer our own rationale for our holding.
Indisputably, Florida's public policy manifests a strong intent to protect children from harm. As parens patriae, the state's authority is broader than that of a parent's and may be invoked to limit parental authority when necessary to protect children. Global Travel Mktg., Inc. v. Shea, 908 So.2d 392, 399 (Fla.2005). The expression of that policy most relevant here is the legislative limitation on parental authority to settle post-injury claims contained in section 744.301(2), Florida Statutes (2007). By requiring judicial approval of settlements over $15,000, the legislature has manifested a policy of protecting children from parental imprudence in the compromise of their claims for injury. Because parents' legal duty to support their children ends at or near the age of majority, the potential societal burden of an imprudent settlement justifies judicial oversight of the settlement contract.
The case of a pre-injury exculpatory clause may be distinguished from a post-injury settlement in one respect. In a pre-injury *1115 situation, there is no risk that financial pressure will induce parental imprudence. Instead, the parents' motivation is the potential benefit to the child derived from the child's participation in the activity. Theoretically, the prudent parent can weigh this benefit against the potential consequence of a negligently caused injury and determine whether it is in the child's best interest to execute an exculpatory clause and permit the activity. Motivations aside, however, the consequence of an imprudent decision is the same as in the post-injury context: a child will suffer injury for which society might ultimately bear the burden. Thus, the parents' interest is not necessarily consonant with those of society and the child.
Although this potential societal cost is arguably a justification to invalidate all pre-injury exculpatory clauses, we discern significant reasons for a distinction when a child is the subject. A consenting adult has the ability to avoid potential injury by exercising personal caution and mitigate the impact of future economic loss by purchasing disability and health insurance policies. Conversely, children tend to throw caution to the wind during risky activities, resulting in a decreased chance of avoiding injury caused by the negligence of others. More importantly, children have no ability to indemnify themselves for future economic losses like their adult counterparts, making them especially vulnerable after the parents' support obligation ends. As parens patriae, the state also has an interest in protecting children from the noneconomic consequences of negligently-caused injury. A policy that enforces exculpatory clauses fosters an increased risk of injury through carelessness. For these reasons, although the scales of public policy might tip in favor of the enforcement of exculpatory contracts involving consenting adults, we think they tip the other way when children are the subject.
We emphasize that our holding is limited to commercial enterprises. They can insure against the risk of loss and include these costs in the price of participation. Although we are not called upon to address the validity of exculpatory clauses in the context of activities for children sponsored by not-for-profit, community-based organizations and entities, we can envision a public policy distinction supporting a different conclusion in that context.
There are important societal interests in fostering these activities sponsored by community-based organizations, which often provide a benefit to the entire community and include all children, even those who are unable to afford activities offered by commercial enterprises. Exculpatory clauses might be vital to some of these organizations. If they are not enforceable, insurance costs might prove prohibitive and volunteers might be reluctant to participate because they run the risk of personal liability. We also have an empirical sense that the parens patriae function of the state is more closely approximated when the activity is under the watchful eye of a community-based organization or entity. These activities are often run by committee, their policies are open to public scrutiny and they often invite input and active participation from parents. Furthermore, the lack of profit motive might minimize the tension between costs and safety.
We acknowledge that the supreme court rejected this distinction in Shea in the context of arbitration clauses but believe that the distinction is logical and remains viable in the context of exculpatory clauses. See In re Royal Caribbean Cruises Ltd., 403 F.Supp.2d 1168 (S.D.Fla.2005) (adopting distinction between for-profit and not-for-profit entities); see also In re Royal Caribbean Cruises Ltd., 459 *1116 F.Supp.2d 1275, 1279-81 (S.D.Fla.2006) (adopting distinction; noting Shea expressly limited to arbitration clauses).
Krathen v. School Board of Monroe County, 972 So.2d 887 (Fla. 3d DCA 2007), cited as supplemental authority by Appellee, is "distinguished because it did not involve a commercial enterprise. In fact, most, if not all, of the cases cited by Appellee for the proposition that these contracts are enforceable may be distinguished on that basis. See, e.g., Hohe v. San Diego Unified Sch, Dist., 224 Cal.App.3d 1559, 274 Cal.Rptr. 647, 648-49 (1990) (recreational event sponsored by volunteer parent, teacher, student association); Gonzalez v. City of Coral Gables, 871 So.2d 1067, 1068 (Fla. 3d DCA 2004) (high school fire rescue training program); Sharon v. City of Newton, 437 Mass. 99, 769 N.E.2d 738, 746-47 (2002) (voluntary high school cheer-leading program); Zivich v. Mentor Soccer Club, Inc., 82 Ohio St.3d 367, 696 N.E.2d 201 (1998) (non-profit youth soccer organization; holding expressly limited to not-for-profit entities).
We have considered, but are not persuaded by, Appellee's constitutional arguments. The rights identified by Appellee to raise one's child without governmental interference are unavailing to Appellee who seeks to enforce an exculpatory clause in a contract. Moreover, even if we were to conclude that Appellee may avail itself of these constitutional arguments, we reject any constitutional interpretation that limits the state's authority to invalidate these clauses in this context on public policy grounds.
We also take issue with Appellee's contention that we are compelled to affirm the trial court because of our prior panel decision in Lantz v. Iron Horse Saloon, Inc., 717 So.2d 590 (Fla. 5th DCA 1998). Lantz is not in tension with our holding today. There, we were only asked to address the correctness of the lower court's determination that the exculpatory clause was unambiguous.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
SAWAYA and EVANDER, JJ., concur.

ON MOTION FOR CERTIFICATION
PER CURIAM.
We grant the Motion for Certification but restate the question as follows:
WHETHER A CONTRACT CONTAINING AN EXCULPATORY CLAUSE, SIGNED BY A PARENT ON BEHALF OF HER CHILD, IN FAVOR OF A COMMERCIAL ENTERPRISE, IS ENFORCEABLE TO DEFEAT THE CHILD'S ACTION TO RECOVER FOR PERSONAL INJURIES SUSTAINED BY THE CHILD AS A RESULT OF THE ENTERPRISE'S NEGLIGENCE.
We certify that this is a question of great public importance.
SAWAYA, TORPY and EVANDER, JJ., concur.
NOTES
[1] In re Royal Caribbean Cruises Ltd., 459 F.Supp.2d 1275 (S.D.Fla.2006); In re Royal Caribbean Cruises Ltd., 403 F.Supp.2d 1168 (S.D.Fla.2005); Cooper v. Aspen Skiing Co., 48 P.3d 1229, 1232-35 (Colo.2002); Fields v. Kirton, 961 So.2d 1127 (Fla. 4th DCA 2007); Meyer v. Naperville Manner, Inc., 262 Ill. App.3d 141, 199 Ill.Dec. 572, 634 N.E.2d 411, 415 (1994); Hojnowski ex rel. Hojnowski v. Vans Skate Park, 375 N.J.Super. 568, 868 A.2d 1087 (2005); Fitzgerald v. Newark Morning Ledger Co., Ill N.J.Super. 104, 267 A.2d 557, 559 (1970); Munoz v. II Jaz Inc., 863 S.W.2d 207, 209-10 (Tex.Ct.App.1993); Hawkins v. Peart, 37 P.3d 1062, 1065-66 (Utah 2001); Scott v. Pac. W. Mountain Resort, 119 Wash.2d 484, 834 P.2d 6, 11-12 (1992). Appellee acknowledges that it has not located any contrary authority addressing this issue in the context of a commercial enterprise. The cases upon which Appellee relies involve not-for-profit entities, which we think provides a sound basis for distinction.
[2] Appellants also argue that the contract is not enforceable because parents never have authority to waive their children's tort claims absent express authorization by statute. Although we express considerable skepticism about this contention, we find it unnecessary to reach a definitive conclusion on this issue to resolve the narrow issue now before us.