# IN THE SUPREME COURT OF IOWA

No. 08–0776

Filed November 5, 2010

**TANEIA GALLOWAY,**

Appellant,

vs.

**STATE OF IOWA,**

Appellee.

Appeal from the Iowa District Court for Black Hawk County, George Stigler, Judge.

The plaintiff appeals from a summary judgment ruling enforcing a parent's preinjury releases of her minor child's personal injury claim. **REVERSED AND REMANDED.**

Ryan T. Beattie of Beattie Law Firm, P.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Joanne Moeller, Assistant Attorney General, for appellee.

**HECHT, Justice.**

A parent signed release forms waiving her minor child's personal injury claims as a condition of the child's participation in an educational field trip. This action was filed against the State after the child was injured during the trip. The district court granted the State's motion for summary judgment, concluding the releases signed by the parent resulted in an enforceable waiver of the child's personal injury claim. On appeal from the summary judgment ruling, we conclude the releases violate public policy and are therefore unenforceable.

## I. Background Facts and Proceedings.

In July of 2005, fourteen-year-old Taneia Galloway attended a field trip to Milwaukee, Wisconsin, with Upward Bound, a youth outreach program organized by the University of Northern Iowa and the State of Iowa. On the field trip, Galloway was injured when she was struck by a car as she attempted to cross the street.

Before Galloway went on the field trip, her mother signed two documents entitled "Field Trip Permission Form" and "Release and Medical Authorization." The first document read:

> Classic Upward Bound Summer Residential Program
> Field Trip Permission Form
>
> Dear Parent(s)/Guardian(s):
> Each summer the participants of the Classic Upward Bound Program attend field trips locally and out-of-town. This form must be completed in order for your son/daughter to participate in said events.
>
> As the parent/guardian of Taneia Galloway, I hereby give my permission for him/her to participate in ALL field trips sponsored by the University of Northern Iowa Classic Upward Bound Program during the Summer Residential and the Academic Year Program. Taneia Galloway understands he/she is to follow all rules of the Classic Upward Bound Program while participating in these field trips.

Furthermore, I will not hold the University of Northern Iowa or any of its employees or agents responsible for any accidents, losses, damages or injuries resulting from the son/daughter's participation in any or all the field trips. I also release the Classic Upward Bound Program, the University of Northern Iowa, and its employees and agents from all liabilities.

If the student is living with both parents/guardians, both parents/ guardians must sign this form.

Galloway's mother signed and dated the form on June 13, 2005. She also signed another form which read as follows.

### RELEASE AND MEDICAL AUTHORIZATION
University of Northern Iowa Classic Upward Bound – Dates: June 1, 2005 – May 30, 2006

Read Carefully –
This document is a release and authorizes medical treatment.

Please return all copies of this form to the program staff. Registration is not considered complete until this completed form is filed with the University of Northern Iowa Classic Upward Bound Program.

The student will not be allowed to participate in the Classic Upward Bound Program if this information is not provided. This information is not routinely provided to individuals or organizations outside the University, except as provided by law.

In consideration of the University of Northern Iowa granting the student permission to participate in the Classic Upward Bound Program, I hereby assume all risks of her/his injury (including death) that may result from any program activity. As parent/guardian I do hereby release and agree to indemnify, defend and hold harmless the University of Northern Iowa, State Board of Regents, State of Iowa, Classic Upward Bound and its officers, employees, agents and all participants in the program from and against all liability including claims and suits of law or in equity for injury (fatal or otherwise) which may result from any negligence and/or the student taking part in program activities.

I certify that within the past year the student has had a physical examination and that she/he is physically able to participate in all Upward Bound activities.

In the event of injury or illness, I hereby give my consent for medical treatment, and permission to program staff for supervising and performing, as deemed necessary by staff, on-site first aid for minor injuries, and for a licensed physician to hospitalize and secure proper treatment (including injections, anesthesia, surgery, or other reasonable and necessary procedures) for the student. I agree to assume all cost related to any such treatment. I also authorize the disclosure of medical information to my insurance company for the purpose of this claim. I understand each student must provide her/his own medical insurance.

I understand that I am responsible for any medical or other charges related to the student's attendance at the University of Northern Iowa Classic Upward Bound Program.

Galloway, through her mother as next friend,[1] filed suit against various parties, including the State of Iowa. The State moved for summary judgment, contending the releases signed by Galloway's mother waived any claims against it for negligence. The district court concluded the releases constituted a valid waiver of Galloway's claims and granted summary judgment. Galloway appeals.[2]

## II.  Scope of Review.

Our review is for correction of errors at law. Iowa R. App. P. 6.907. When reviewing a grant of summary judgment we must determine if "the moving party has demonstrated the absence of any genuine issue of material fact and is entitled to judgment as a matter of law." *Huber v. Hovey*, 501 N.W.2d 53, 55 (Iowa 1993). "Summary judgment is proper if the only issue is the legal consequences flowing from undisputed facts." *Id.* Determining the legal effects of a contract is a matter of law to be resolved by the court. *Id.* at 55–56.

---

[1]Taneia Galloway has since reached the age of majority and has been substituted as plaintiff.

[2]The district court denied the summary judgment motions of the other defendants, but Galloway has since dismissed her claims against the remaining defendants.

**III. Discussion.**

Galloway makes three arguments on appeal that we should conclude the releases signed by her mother are void and unenforceable. First, she asserts we should follow a majority of other state courts that have concluded it is against public policy for a parent to waive liability for a child's injury before the injury occurs. In the alternative, she argues an application of the factors enunciated in *Tunkl v. Regents of University of California*, 383 P.2d 441 (Cal. 1963), demonstrates it is against public policy to enforce releases signed by a parent as a condition of the child's participation in an educational activity. Her final contention is that these particular releases are insufficient to waive the State's liability because the intent to waive liability is not clearly expressed.

Galloway's primary argument is that public policy considerations should lead this court to conclude preinjury releases executed by parents as a condition of their children's participation in educational activities are incompatible with public policy and therefore unenforceable. In particular, she contends public policy should preclude enforcement of releases executed by parents because parents are ill-equipped to assess in advance the nature of risks of injury faced by children while they are participating in activities at remote locations under the supervision of others and because parents are uninformed of the nature and extent of the gravity of the injuries to which their children may be exposed when the releases are executed.

The State, however, argues that public policy weighs in favor of enforcing preinjury releases signed by parents. The State contends that all of the arguments supporting the enforcement of preinjury releases executed by adults waiving liability for their own injuries apply with

equal force to releases given by parents on behalf of their minor children. The State further contends the public policy of this state requires courts to give deference to parents' child-rearing choices, including the choice to release third parties in advance for negligent injury to children.

We begin with an acknowledgment of the challenging nature of identifying which societal values are properly included within the purview of "public policy." In our efforts to characterize the imprecise boundaries of the concept, we have made reference to the broad concepts of "public good," *In re Estate of Barnes*, 256 Iowa 1043, 1051, 128 N.W.2d 188, 192 (1964), and " 'established interest[s] of society.' " *Walker v. Am. Family Mut. Ins. Co.*, 340 N.W.2d 599, 601 (Iowa 1983) (quoting *Wunschel Law Firm, P.C. v. Clabaugh*, 291 N.W.2d 331, 335 (Iowa 1980)). However, despite the difficulty of characterizing the exact elements of the public interest, we have considered and weighed public policy concerns when deciding important legal issues. For example, such considerations were a critical aspect of our analysis when we abolished the doctrine of immunity for charitable institutions. *Haynes v. Presbyterian Hosp. Ass'n*, 241 Iowa 1269, 1274, 45 N.W.2d 151, 154 (1950) (weighing and ultimately rejecting public policy justifications for the immunity doctrine).

We have also confronted public policy considerations in the context of litigation between family members. Our understanding of the public interest prompted this court to exercise its authority to abrogate the doctrine of interspousal immunity. *Shook v. Crabb*, 281 N.W.2d 616, 620 (Iowa 1979) (relying on the fundamental public policy that courts should afford redress for civil wrongs and rejecting the proposition that the doctrine of interspousal immunity involved determinations of public policy most appropriately made by the legislature). We again carefully

considered public policy factors in the family context when we abolished the doctrine of absolute parental immunity and recognized a remedy for children injured by the negligent acts of a parent. *Turner v. Turner*, 304 N.W.2d 786, 787–88 (Iowa 1981) (rejecting the argument that "domestic government" and "parental discipline and control" are matters of public policy justifying retention of parental immunity). In this case, we are called upon to decide whether public policy considerations should lead us to invalidate preinjury releases given by a parent purporting to waive her minor child's claim for personal injuries.

As the freedom to contract weighs in the balance when public policy grounds are asserted against the enforcement of a contract, courts must be attentive to prudential considerations and exercise caution. *Tschirgi v. Merchs. Nat'l Bank of Cedar Rapids*, 253 Iowa 682, 690, 113 N.W.2d 226, 231 (1962). These considerations have led this court to repeatedly hold that "contracts exempting a party from its own negligence are enforceable, and are not contrary to public policy." *Huber*, 501 N.W.2d at 55. Notwithstanding this well-established general rule, Galloway urges us to join the majority of state courts who have examined the issue and have concluded public policy precludes enforcement of a parent's preinjury waiver of her child's cause of action for injuries caused by negligence. *See Apicella v. Valley Forge Military Acad. & Junior Coll.*, 630 F. Supp. 20, 24 (E.D. Penn. 1985); *Fedor v. Mauwehu Council*, 143 A.2d 466, 468 (Conn. Super. Ct. 1958); *Kirton v. Fields*, 997 So. 2d 349, 358 (Fla. 2008); *Meyer v. Naperville Manner, Inc.*, 634 N.E.2d 411, 414 (Ill. App. Ct. 1994); *Hojnowski v. Vans Skate Park,* 901 A.2d 381, 386 (N.J. 2006); *Fitzgerald v. Newark Morning Ledger Co.*, 267 A.2d 557, 558 (N.J. Super. Ct. Law Div. 1970); *Rogers v. Donelson-Hermitage Chamber of Commerce,* 807 S.W.2d 242, 245 (Tenn. Ct. App. 1990); *Munoz v. II Jaz*

*Inc.*, 863 S.W.2d 207, 209–10 (Tex. App. 1993); *Hawkins ex rel. Hawkins v. Peart*, 37 P.3d 1062, 1066 (Utah 2001); *Scott ex rel. Scott v. Pac. W. Mountain Resort*, 834 P.2d 6, 10–11 (Wash. 1992).

The State responds that parents' preinjury releases of their children's personal injury claims are entirely consistent with legal traditions and public policy giving deference to parents' decisions affecting the control of their children and their children's affairs. To be sure, we have noted that "a parent's 'interest in the care, custody, and control of [his] children' is ' "perhaps the oldest of the fundamental liberty interests recognized by" ' the United States Supreme Court." *Lamberts v. Lillig*, 670 N.W.2d 129, 132 (Iowa 2003) (alteration in original) (quoting *Santi v. Santi*, 633 N.W.2d 312, 317 (Iowa 2001)). Yet, the deference and respect for parents' decisions affecting their children's property interests is restricted to some extent by the public's interest in the best interests of children. For example, this court has determined that the law will not permit a parent to compromise her child's financial security by waiving child support payments from the other parent in exchange for relinquishment of visitation rights. *Anthony v. Anthony*, 204 N.W.2d 829, 833 (Iowa 1973). We concluded in *Anthony* that an agreement to waive child support under such circumstances "makes the child's best interest subservient to parental self interest." *Id.* at 834. Consistent with the policy considerations noted by this court in *Anthony*, a modification of a child support order "is void unless approved by the court . . . and entered as an order of the court." Iowa Code § 598.21C(3) (2009).

Parents' authority to make decisions affecting their children's affairs is limited in other contexts as well. If a conservator for a minor child has not been appointed, a parent's authority to receive money or

other property for his or her child under the Iowa Uniform Transfers to Minors Act is limited to an aggregate value of $25,000. Iowa Code § 633.574; *see also* Iowa Code § 565B.7(3) (stating if a custodian has not been nominated, or all persons nominated to serve as custodians are unable, unwilling or ineligible to serve, a transfer may be made to an adult member of the minor's family unless the property exceeds $25,000 in value). Generally, a parent has no right, in the absence of authorization from a court, to release or compromise causes of action belonging to a minor. 59 Am. Jur. 2d, *Parent and Child* § 44, at 212 (2002). This general rule is followed in this jurisdiction, where a parent serving as her child's conservator adjusts, arbitrates, or compromises claims in favor of or against the ward with approval of the court. Iowa Code § 633.647(5).

These limitations on parents' authority to make legally enforceable transactions affecting the property and financial interests of their minor children are derived from a well-established public policy that children must be accorded a measure of protection against improvident decisions of their parents. We conclude the same public policy demands minor children be protected from forfeiture of their personal injury claims by parents' execution of preinjury releases. By signing a preinjury waiver, a parent purports to agree in advance to bear the financial burden of providing for her child in the event the child is injured by a tortfeasor's negligence. Sometimes parents are not willing or able to perform such commitments after an injury occurs. If parents fail to provide for the needs of their injured children, and the preinjury waiver in favor of the tortfeasor is enforced, financial demands may be made on the public fisc to cover the cost of care.

Beyond the public's pure economic interest in protecting children against parents' improvident decisions waiving their children's causes of action before injuries occur, another compelling practical reason weighs in favor of protecting children from the harsh consequences of preinjury releases. An adult's preinjury release of his claim for his own personal injuries will be enforced even if the releasing party did not read the document before signing. "It is well settled that failure to read a contract before signing it will not invalidate the contract. Absent fraud or mistake, ignorance of a written contract's contents will not negate its effect." *Huber*, 501 N.W.2d at 55 (citation omitted) (holding that an adult's preinjury release was valid even though he did not read the document). While this court has found valid policy reasons supporting the rule allowing the enforcement of releases against adults who voluntarily, and in some cases foolishly, waive their own personal injury claims in advance of injury, we believe the strong public policy favoring the protection of vulnerable minor children demands a different rule here.

As the Washington Supreme Court has noted, if a parent lacks authority without court approval to compromise and settle her minor child's personal injury claim *after* an injury has occurred, "it makes little, if any, sense to conclude a parent has the authority to release a child's cause of action prior to an injury." *Scott*, 834 P.2d at 11–12; *accord Hojnowski*, 901 A.2d at 387 (noting "children deserve as much protection from the improvident compromise of their rights before an injury occurs as [a rule requiring court approval of settlements of minor children's claims] affords them after the injury"); *Hawkins*, 37 P.3d at 1066.

We also find it significant that in the instance of an adult releasing another party's liability for negligence, the person reading the contract,

and presumably comprehending and agreeing with its terms, is the person who will engage in the activity presenting the risk of injury for which the release is contemplated. Thus, if an adult waives another's liability by executing a preinjury waiver of her own personal injury claims, she is aware that she has done so and is on notice to be vigilant for negligence in the course of her participation. While participating in the activity, if she perceives an unreasonable risk of injury, the adult is free to withdraw from it. Children tend to be vulnerable in such situations, however, in ways adults are not. The parent who reads, understands, and executes a waiver of liability for her child is not the person who will participate in the activity. Accordingly, the child may or may not understand what has been forfeited as a condition of her participation in an activity. She may or may not have the knowledge and experience required to assess and avoid risks of injury created by the activity. Even if a parent exercises reasonable care in investigating the potential risks of injury before signing a waiver and in advance of her child's participation, often (as in this case) the parent is not present with the child during the subsequent activity. The parent hopes and perhaps believes her child will be safe and properly supervised during the activity, but if she does not participate in the activity with her child, she has no ability to protect her child once the activity begins. And, even if the child is uncomfortable with some aspect of the activity or senses a risk of injury while participating in the activity, the child may or may not have the ability to remove herself from it. The child's ability to avoid the risk of injury will vary greatly, depending on the age and maturity of the child, the type of activity, her access to a phone, the personality and competence of the people supervising the activity, and other factors.

We conclude for all of these reasons that the public policy protecting children from improvident actions of parents in other contexts precludes the enforcement of preinjury releases executed by parents for their minor children. Like a clear majority of other courts deciding such releases are unenforceable, we believe the strong policy in favor of protecting children must trump any competing interest of parents and tortfeasors in their freedom to contractually nullify a minor child's personal injury claim before an injury occurs.

The State urges the court to follow the decisions of a minority of jurisdictions upholding preinjury releases executed by parents waiving the personal injury claims of their minor children. The decisions following the minority rule arise in litigation filed against schools, municipalities, or clubs providing activities for children. *See, e.g., Hohe v. San Diego Unified Sch. Dist.*, 274 Cal. Rptr. 647, 649 (Ct. App. 1990) (upholding a preinjury release executed by a father on behalf of his minor child waiving any claims resulting from the child's participation in a school-sponsored event); *Sharon v. City of Newton*, 769 N.E.2d 738, 747 (Mass. 2002) (holding a parent has the authority to bind a minor child to a waiver of liability as a condition of a child's participation in public school extracurricular sports activities); *Zivich v. Mentor Soccer Club, Inc.*, 696 N.E.2d 201, 205 (Ohio 1998) (concluding a parent may bind a minor child to a release of volunteers and sponsors of a nonprofit sports activity). The State contends the California, Massachusetts, and Ohio courts wisely determined public policy considerations justify the enforcement of parents' preinjury waivers of their children's claims. If such parental waivers are rendered unenforceable, the State posits recreational, cultural, and educational opportunities for youths will cease because organizations sponsoring them will be unable or unwilling to purchase insurance or otherwise endure the risks of civil liability. Our

court of appeals expressed this generalized fear when it concluded the "[p]ublic interest is served by allowing the parties the freedom to enter into such agreements." *Korsmo v. Waverly Ski Club*, 435 N.W.2d 746, 749 (Iowa Ct. App. 1988) (concluding "exculpatory provisions [in releases executed by adults waiving their own claims for personal injuries] actually promote [the] public interest because without such releases, it is doubtful these events would occur").

We believe the fear of dire consequences from our adoption of the majority rule is speculative and overstated. We find no reason to believe opportunities for recreational, cultural, and educational activities for youths have been significantly compromised in the many jurisdictions following the majority rule. In the final analysis, we conclude the strong public policy favoring the protection of children's legal rights must prevail over speculative fears about their continuing access to activities. We are mindful that if we have misapprehended the public policy considerations at work on this issue, the political branches of our government will adopt a different rule.

Accordingly we conclude the district court erred in enforcing the releases in this case. Having decided the releases that are the subject of this case are not enforceable, we do not address other arguments advanced by Galloway for reversal.

### IV. Conclusion.

We conclude preinjury releases executed by parents purporting to waive the personal injury claims of their minor children violate public policy and are therefore unenforceable. Accordingly, we reverse the district court and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

All justices concur except, Cady, J., and Ternus, C.J., who dissent.

**CADY, Justice (dissenting).**

I respectfully dissent.

Courts are, at times, capable of deciding legal issues based on public policy. These times, however, occur when the public policy is clear and apparent. *See Fitzgerald v. Salsbury Chem., Inc.*, 613 N.W.2d 275, 283 (Iowa 2000) ("The need for clarity in public policy is . . . recognized in our reluctance to search too far beyond our legislative pronouncements and constitution to find public policy to support an action."). Otherwise, public policy is best left to our legislative branch of government to decide as representatives of the people. The question whether it is imprudent as a matter of law for a parent to waive legal liability on behalf of a child as a condition for the child's participation in an educational field trip is a matter for the legislature, not judges. If the subject of parental field trip waivers has surfaced in this state as a matter of public concern, the legislature can properly examine the issue and take any appropriate action.

I would affirm the decision of the district court.

Ternus, C.J., joins this dissent.