GRIFFIN, J.
Appellant, the Guardianship of J.S.J., appeals a post-judgment order granting Appellees’, Alejandro J. Pena, M.D., and Physicians Associates of Florida, Inc., motion to have Martha Smith, as Guardian of J.S.J., fill out Form 1.977 (Fact Information Sheet)[1] in aid of execution of their judgment. On appeal, Appellant argues that the Florida Statutes do not authorize a natural guardian to incur debt or place a minor’s assets at risk, especially those under the control of a legal guardian of a minor’s property. See § 744.301, Fla. Stat. (2011). Rather, the Florida Legislature created safeguards against such acts. The Guardianship was not a named party to the underlying action and was not authorized to participate in the lawsuit. It cannot be a “judgment debtor” as referenced in rule 1.560(b), and thus should not be required to fill out the fact information sheet. We agree and reverse.
On December 8, 1999, the minor child was born severely brain damaged. In 2002, a guardianship was set up for the child through the probate court [“the Guardianship”]. Tracie Turner Jackson, the minor’s mother, was named as the legal guardian of the minor child’s property-
in 2003, Mr. and Mrs. Jackson, individually, and as parents and natural guardians of their minor, filed a medical malpractice negligence complaint against Dr. Pena and Physicians Associates. The Guardianship was not mentioned in the complaint and no notice was provided to the probate court. In 2006, Mrs. Jackson was removed as guardian of the property, and Martha Smith was appointed as successor guardian. Neither the Guardianship nor Martha Smith was named as a party in the negligence action, and neither participated.
A jury returned a verdict in favor of Appellees in the malpractice action. The trial court entered a final cost judgment against Mr. and Mrs. Jackson, individually and as parents and natural guardians of their minor child, in the amount of $83,794.50. Appellees subsequently filed a motion in probate court, seeking to require Martha Smith to complete Form 1.977.
We begin with the proposition that guardianships are governed and controlled *1283 exclusively by statute in Florida. Hughes v. Bunker, 76 So.2d 474 (Fla.1954); Poling v. City Bank & Trust Co. of St. Petersburg, 189 So.2d 176 (Fla. 2d DCA 1966). A guardianship has been defined as a trust relationship of the most sacred character in which one person, called a “guardian,” acts for another, called the “ward,” whom the law regards as incapable of managing his own affairs. 39 Am.Jur.2d, Guardian and Ward § 1. There are various types of guardianships, including a natural guardian and a court-appointed guardian. The first depends upon the parental relationship and the second depends upon court order.
A natural guardianship ordinarily confers only custody of the person, and not of the property, of the child to the guardian. Parents, as natural guardians, however, are expressly authorized to exercise limited powers with regard to the personal property of their children. Section 744.301(2), Florida Statutes (2011), sets out the actions natural guardians may take on behalf of their minor children. All of the powers granted by the Legislature are for the benefit of the minor. There is no provision in the statute that allows the natural guardian to incur debt or to place the minor’s assets at risk. In fact, section 744.397(3), Florida Statutes (2011), suggests otherwise. That section provides:
If the ward is a minor and the ward’s parents are able to care for him or her and to support, maintain, and educate him or her, the guardian of the minor shall not so use his or her ward’s property unless directed or authorized to do so by the court.
See also § 744.444(8), Fla. Stat. (2011).
Likewise, section 744.387(2), Florida Statutes, only permits the natural guardians or legal guardian of a minor to settle a claim by or on behalf of a minor that does not exceed $15,000 without bond. A legal guardianship is required when the net amount of the settlement to the minor exceeds $15,000. After an action on a claim has been commenced by or on behalf of a minor, no settlement is effective unless approved by the court having jurisdiction of the action. § 744.387(3)(a), Fla. Stat. (2011).
In Yount v. Varnes, 691 So.2d 1129 (Fla. 4th DCA 1997), which the trial court concluded was controlling, a minor was severely injured in an automobile accident when she was a year old and received emergency room medical treatment. Her accident case resulted in a settlement of approximately $2.3 million. As a result of the settlement, a guardianship was set up for the minor. Settlement proceeds were placed in an investment management account that was managed by a CPA, who was appointed legal guardian of the minor’s property. A court order was required for the withdrawal of funds from the account. The remainder of the settlement was structured so that the minor received monthly and periodic lump sum payments during her lifetime.
The minor, through her father as natural guardian, brought a medical malpractice action against the emergency room physician who had treated the minor. After a defense verdict, the physician obtained a prevailing party judgment for his attorney’s fees and costs against the minor. Experiencing difficulty in collecting his judgment, he had a writ of garnishment issued against the bank where the investment management account was located, which resisted payment in the absence of a court order.
The probate court refused to approve payment of the judgment, believing that it had the discretion to do so, relying on authorities such as Brown v. Ripley, 119 So.2d 712, 717 (Fla. 1st DCA 1960), in which the court said:
Independent of statute or rule a court of chancery has inherent jurisdiction and *1284 right to control and protect infants and their property, and enjoys a broad discretion in making orders protecting their welfare.
Yount, 691 So.2d at 1130. The physician appealed the probate court’s refusal to approve payment of the judgment from the minor’s investment account. The Fourth District reversed, holding:
Neither party has cited, and our independent research does not reveal, a case from Florida or any other jurisdiction which would give a court discretion to refuse payment of a judgment under these circumstances. Nor have we found anything in our statutes or rules pertaining to guardianships which would authorize a court to refuse payment of a judgment. Although our legal system has built-in protections for infants, as well as persons with other types of disabilities, in order to insulate them from having to suffer the consequences of some types of conduct, we cannot find any which would allow courts to discriminate as to which judgments should be paid.
[[Image here]]
The statute did require counsel to inform clients of its provisions in writing, before initiating malpractice actions. The lawsuit in this case was brought by [the minor’s] father, as her natural guardian, and presumably his decision to proceed was an informed one. Although we do not relish having to impose this burden on [the minor], we cannot ignore the fact that if she had prevailed in the malpractice action she would have recovered prevailing party attorney’s fees under the statute. Neither can we cast aside the rights of [the physician].
Id. Yount is the only Florida case that resembles the current case.
Yount’s reliance upon the “prevailing party” statute, section 768.56(1), Florida Statutes, is odd. There is no dispute that under section 768.56 Yount was entitled to his costs; the question was, who was responsible for those costs. Apparently, the Yount court concluded that the child was the non-prevailing party and, therefore, any asset of the child was available to satisfy a judgment in favor of the prevailing defendant, but this view appears to ignore the entire statutory construct designed to provide supervision over a minor’s assets. We also question the Yount court’s suggestion that, if the natural guardian had prevailed, the child would have been entitled to recover the fees and costs. Almost certainly, it was the natural guardian who had contracted with counsel and the guardian who would have been at risk for fees and/or costs. If the natural guardian had prevailed, those fees and costs were recoverable by the guardian as “prevailing party” to reimburse him for the contractual burden he had undertaken to secure counsel and pursue the litigation. In the case now before us, the trial judge analyzed the issues as we have and rightly concluded, despite his stated reservations, that he was bound by Yount, but we are not.
The natural guardians’ decision to bring the lawsuit, as next friend, on behalf of the minor cannot implicate the assets held by the legal guardian where the legal guardian has not consented to or participated in the litigation, and where no court approval for the expenditure of the minor’s assets has been sought or obtained. Notably, had Mrs. Jackson initiated the lawsuit as the minor’s legal guardian, she would have had to have received court approval to do so. § 744.441(11), Fla. Stat. Likewise, court approval would have been required for the guardian to prosecute or defend the action. Id. Here, the State, through the law of guardianship, has protected the minor by requiring court approval of a guardian’s decision to impact a minor’s estate. The legal guardian was not a par *1285 ty to the lawsuit, and court approval of the suit was not obtained. Therefore, the legal guardian in this case is not liable for payment of the cost judgment and had no duty to complete Form 1.977.[2]
The lower court did consider a line of more recent cases concerning a natural guardian’s authority to impact a minor’s rights. Both Kirton v. Fields, 997 So.2d 349 (Fla.2008) and Applegate v. Cable Water Ski, L.C., 974 So.2d 1112 (Fla. 5th DCA 2008), concerned a natural guardian’s authority to sign a pre-injury release on behalf of his or her child. Although we think these cases are of limited relevance due to the public policy concerns that were important to the court’s analysis, the Kirton opinion does rest on reasoning similar to ours.
The supreme court said in Kirton that a parent’s right to allow a minor child to participate in a particular activity as part of the parent’s fundamental right to raise a child, does not mean that a parent also has a right to execute a pre-injury release of a tortfeasor on behalf of a minor child. It cannot be presumed that a parent, who has decided voluntarily to give up a minor child’s rights in advance, is acting in the child’s best interest. Kirton, 997 So.2d at 357. Moreover, a “parent’s decision in signing a pre-injury release impacts the minor’s estate and the property rights personal to the minor.” Id. (quoting Fields v. Kirton, 961 So.2d 1127, 1129-30 (Fla. 4th DCA 2007)).
REVERSED.
ORFINGER, C.J., and JACOBUS, J., concur.

. Florida Rule of Civil Procedure 1.560(b) provides:
(b) Fact Information Sheet. In addition to any other discovery available to a judgment creditor under this rule, the court, at the request of the judgment creditor, shall order the judgment debtor or debtors to complete form 1,977, including all required attachments, within 45 days of the order or such other reasonable time as determined by the court. Failure to obey the order may be considered contempt of court.

. When, as here, a legal guardian of the property of a minor has been appointed, we question the authority of the natural guardian to bring an action in court or settle any claim, regardless of amount.