## Metzger Bros. v. Watson's Guardian.

(Decided Nov. 28, 1933.)

WHEELER, WHEELER & SHELBOURNE for appellants.

L. B. ALEXANDER for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

On April 5, 1930, Elzie Watson, an infant nineteen years of age, while walking diagonally across Third street in the city of Paducah, was struck by a truck belonging to Metzger Brothers, who carried indemnity insurance in the Maryland Casualty Company. In addition to other injuries, Watson's arm and leg below the knee were broken, and he was carried to the Riverside Hospital in Paducah. While in the hospital he was visited by the adjuster of the Maryland Casualty Company, and a settlement of the matter was discussed. Following their conversation a petition was filed on April 26, 1930, in the McCracken circuit court by Charles Watson, as the next friend of Elzie Watson, against Fritz Metzger, E. L. Metzger, and Harry Metzger, containing the following allegations:

"Plaintiff, Charles Watson, next friend of Elzie Watson, and Elzie Watson, who sues by his next friend, Charles Watson, says that the plaintiff, Elzie Watson, is an infant under the age of twenty-one (21) years. Said Charles Watson says that he has no property in this State subject to execution, and is not able to execute a bond as next friend, and he asks the Court to permit him to prosecute this action in forma pauperis.

"Plaintiff states that on the 5th day of April, 1930, while the said Elzie Watson was passing over South 3rd Street in Paducah, Kentucky, the defendants, Fritz Metzger, Harry Metzger, and E. L. Metzger, owned a certain truck, which was then being driven over South 3rd Street by their agent, and through the carelessness and negligence of said driver of said truck, the agent and servant of said defendants, said truck was driven against and caused to collide with the said Elzie Watson, whereby he was knocked to the ground, breaking his arm and leg, and otherwise bruising and injuring him, and causing him to suffer great mental and physical suffering and pain. That the striking and injuring of said Elzie Watson was brought about by the carelessness and negligence of defendants' agent, and servant, as above set forth, and that said Elzie Watson was at all times in due care for his own safety, and that by reason of the injuries received by him, he has been damaged in the sum of Five Hundred Dollars ($500.00).

"Wherefore, the said Charles Watson, next friend of Elzie Watson, and Elzie Watson, suing by his next friend, Charles Watson, prays for damages against the defendants, Fritz Metzger, E. L. Metzger, and Harry Metzger, for Five Hundred Dollars ($500.00), and for his costs, and all general relief."

No summons was issued, and no evidence was heard; but after explaining to the judge that the matter was agreed to, the following judgment was entered at the time the petition was filed:

"By agreement of parties, it is ordered that this action be set upon the docket for orders in the present April Term of Court. Then came the defendants, and entered their appearance to this

action, and it appearing from the petition that Charles Watson, next friend of Elzie Watson, is a poor man and unable to execute bond, it is, therefore, ordered by the Court that he be, and he is hereby authorized to prosecute this suit without giving bond for Elzie Watson, and neither party demanding a jury, by agreement of parties, this action is submitted to the Court for trial, without the intervention of a jury, and thereupon the Court doth adjudge that plaintiff, Charles Watson, as next friend of Elzie Watson, recover of the defendant, Fritz Metzger, the sum of Two Hundred Forty Dollars ($240.00). Then came defendant in open Court and paid to plaintiff, the judgment therein, and plaintiff acknowledged the payment of this judgment in full, and this action is stricken from the docket.''

Two or three days after the foregoing judgment was rendered, Elzie Watson left the hospital, and on October 14, 1930, which was before he reached his majority, he, through his statutory guardian, brought this suit alleging that at the time he was injured he was earning $20 a week, that the total loss of time up to the filing of the suit amounted to $1,500, and that he had suffered permanent injury to his damage in the sum of $11,000. He also set up the proceedings of April 26, 1930, and asked the court to set aside the judgment on several grounds, including the ground that Charles Watson, who brought the prior suit, prosecuted same without his knowledge and consent, and had no right to waive his rights in that proceeding. After hearing the evidence the court set aside the judgment of April 26, 1930, and granted Elzie Watson a new trial. From that judgment this appeal is prosecuted.

According to the adjuster they agreed on a settlement by which he was to pay Watson $240, which represented twelve weeks' wages at $20 a week, and his doctor's bill and hospital expenses, all of which amounted to $400. Elzie Watson stated that whatever he did with his father would be all right with him, and that from what he had learned from the doctor he did not regard Elzie's injuries as serious, and had serious doubts as to the liability of the Metzger Brothers. According to Elzie, the agreement was that the adjuster was to pay his doctor's and hospital bills and $20 a

week ·for three months, which represented the time he was off from work, but he declined to sign any receipt. When the three months were up, he was informed at the hospital that he would have to leave as the insurance company was not going to pay his bills any longer. Thereafter the adjuster told the company's attorneys of the agreement, who advised that it would be necessary to have Charles Watson appointed guardian. The county judge declined to make the appointment on the ground that Charles Watson could not give bond. Thereupon it was determined to bring suit through Elzie's father as next friend. Elzie claimed that he gave his father no authority to bring the suit and denied any knowledge of the suit. There was also evidence tending to show negligence on the part of the Metzger Brothers, and further evidence to the effect that the bones in Elzie's. leg had not united, and that he was practically unable to do any kind of work.

By section 391, Civil Code of Practice, it is provided:

"An infant—other ·than a married woman—may, within twelve months after attaining the age of twenty-one years, show cause against a judgment, unless. it be for a tort done by, or for necessaries furnished to, the infant; or unless it be rendered upon a set-off or counter-claim stated in an answer; but the vacation of such judgment shall not affect the title of a bona fide purchaser under it."

We have held that where the condition of the infant appears in the record, but the error does not, the court can vacate the judgment under the foregoing section. Richards v. Richards' Adm'r, 10 Bush, 617. It is also the rule that the rights and interests of infants are under the special protection of courts of equity, that they need not aver diligence in the preparation of their defense to the action, or the discovery of testimony, or any of the special grounds for which new trials may be granted to adults; but that it is enough that they were infants at the time the judgment was rendered, that they applied for relief within the prescribed time, and that the judgment is unjust according to the facts presented by them. Allen v. Troutman's Heirs, 10 Bush, 61; Newland v. Gentry, 18 B. Mon. 666; Bartlett v. Louisville Trust Co., 212 Ky. 13, 277 S. W. 250.

450

Notwithstanding the fact that the attorneys acted in perfect good faith for the purpose of carrying out the agreement as reported by the adjuster, it remains to determine whether Charles Watson as next friend had the right to bring the action, and whether or not the judgment rendered was unjust. As Elzie Watson was over fourteen years of age, he had the right to select his own next friend, and it does not appear that he selected his father as next friend, or authorized him to bring suit in that capacity. Not only so, but the judgment was not based on any evidence, but was a mere result of an attempted compromise which the next friend had no right to make, and the proceeds of which he had no right to collect. Ambrose v. Graziani, 197 Ky. 679, 247 S. W. 953. In addition to this, there was substantial evidence of negligence, and a clear showing that the sum paid under the judgment was wholly insufficient to compensate appellee for his pain and suffering and the permanent reduction of his power to earn money. In the circumstances there is no escape from the conclusion that even if the action had been brought by one authorized to act on behalf of the infant, the judgment is unjust, and the court did not err in setting it aside and awarding a new trial.

It was not essential to the maintenance of this action that appellee should have returned the sum paid under the judgment. He was an infant at the time the judgment was rendered, and the money was paid to his father and not to him, and there was no showing that he had the money at the time the action was brought. Gray v. Grimm, 157 Ky. 603, 163 S. W. 762; Napier v. Chappell, 62 S. W. 21, 22 Ky. Law Rep. 1904; Interstate Coal Co. v. Love, 153 Ky. 323, 155 S. W. 746.

Judgment affirmed.