OPINION OF THE COURT BY JUSTICE VANMETER
By order entered February 14, 2019, this Court granted the United States District Court, Western District of Kentucky's request for certification of law on the following issue:
Is a pre-injury liability waiver signed by a parent on behalf of a minor child enforceable under Kentucky law?
After careful consideration, we hold that such a waiver is unenforceable under the specific facts of this case.
I. Factual and Procedural Background.
House of Boom, LLC ("House of Boom") is a for-profit trampoline park located in Louisville, Kentucky. The park is a collection of trampoline and acrobatic stunt attractions. On August 6, 2015, Kathy Miller purchased tickets for her 11-year-old daughter, E.M., and her daughter's friends to go play at House of Boom. Before purchasing the tickets, House of Boom required the purchaser to check a box indicating that the purchaser had read the waiver of liability. The waiver reads:
(1) RELEASE OF LIABILITY: Despite all known and unknown risks including b[u]t not limite[d] to serious bodily injury, permanent disability, paralysis and loss of life, I, on behalf of myself, and/or on behalf of my spouse, minor child(ren)/ward(s) hereby expressly and volun[ ]tarily remise, release, acquit, satisfy and forever discharge and agree not to sue HOUSE OF BOOM, including its suppliers, designers, installers, manufacturers of any trampoline equipment, foam pit material, or such other material and equipment in HOUSE OF BOOM'S facility (all hereinafter referred to as "EQUIPMENT SUPPLIERS") and agree to hold said parties harmless of and from any and all manner of actions or omission(s), causes of action, suits, sums of money, controversies, damages, judgments, executions, claims and demands whatsoever, in law or in equity, including, but no[t] limited to, any and all claim[s] which allege negligent acts and/or omissions committed by HOUSE
*658 OF BOOM or any EQUIPMENT SUPPLIERS, whether the action arises out of any damage, loss, personal injury, or death to me or my spouse, minor child(ren)/ward(s), while participating in or as a result of participating in any of the ACTIVITIES in or about the premises. This Release of Liability, is effective and valid regardless of whether the damage, loss or death is a result of any act or omission on the part of HOUSE OF BOOM and/or any EQUIPMENT SUPPLIERS.
The agreement goes on to state:
1. By signing this document, I understand that I may be found by a court of law to have forever waived my and my spouse and/or child(ren)/ward(s) right to maintain any action against HOUSE OF BOOM on the basis of any claim from which I have released HOUSE OF BOOM and any released party herein and that I have assumed all risk of damage, loss, personal injury, or death to myself, my spouse and/or my minor child(ren)/wards(s) and agreed to indemnify and hold harmless HOUSE OF BOOM and all EQUIPMENT SUPPLIERS from and against any and all losses, liabilities, claims, obligations, costs, damages and/or expenses whatsoever paid, incurred and/or suffered by HOUSE OF BOOM and all EQUIPMENT SUPPLIERS as a result of the participation in ACTIVITIES in or about the facility by myself, my spouse and/or child(ren)/ward(s) and/or claims asserted by myself, my spouse and/or child(ren)/ward(s) against HOUSE OF BOOM and all EQUIPMENT SUPPLIERS related to such participation in ACTIVITIES. I have had a reasonable and sufficient opportunity to read and understand this entire document and consult with legal counsel, or have voluntarily waived my right to do so. I knowingly and voluntarily agree to be bound by all terms and conditions set forth herein.
The above waiver includes language that, if enforceable, would release all claims by (1) the individual who checked the box, (2) her spouse, (3) her minor child, or (4) her ward against House of Boom. Once Miller checked the box, E.M. participated in activities at House of Boom. She was injured when another girl jumped off a three-foot ledge and landed on E.M's ankle, causing it to break. Miller, as next friend of her daughter, sued House of Boom for the injury. House of Boom, relying on Miller's legal power to waive the rights of her daughter via the release, moved for summary judgment. The Western District of Kentucky concluded that House of Boom's motion for summary judgment involved a novel issue of state law and requested Certification from this Court which we granted. Both parties have briefed the issue and the matter is now ripe for Certification.
II. Analysis.
The question before this Court is whether a parent has the authority to sign a pre-injury exculpatory agreement on behalf of her child, thus terminating the child's potential right to compensation for an injury occurring while participating in activities sponsored by a for-profit company. Although an issue of first impression in the Commonwealth, the enforceability of a preinjury waiver signed by a parent on behalf of a child has been heavily litigated in a multitude of jurisdictions. House of Boom categorizes these decisions in as those that enforced the waiver and those that did not, but the decisions of those jurisdictions more accurately fall into four distinct categories: (1) jurisdictions that *659 have enforced a waiver between a parent and a for-profit entity;[1] (2) jurisdictions that have enforced waivers between a parent and a non-profit entity;[2] (3) jurisdictions that have declared a waiver between a parent and a for-profit entity unenforceable;[3] and (4) jurisdictions that have declared a waiver between a parent and a *660 non-profit entity unenforceable.[4] House of Boom is a for-profit trampoline park, and eleven out of twelve jurisdictions that have analyzed similar waivers between parents and for-profit entities have adhered to the common law and held such waivers to be unenforceable.[5]
Pre-injury release waivers are not per se invalid in the Commonwealth but are generally "disfavored and are strictly construed against the parties relying on them." Hargis v. Baize, 168 S.W.3d 36, 47 (Ky. 2005) (citation omitted). We analyze these agreements for violations of public policy. See Cobb v. Gulf Refining Co., 284 Ky. 523, 528, 145 S.W.2d 96, 99 (1940) (citing RESTATEMENT OF CONTRACTS § 575 ). The relevant public policy here is whether a parent has the authority to enter into an exculpatory agreement on their child's behalf, negating any opportunity for a tort claim-a child's property right-if House of Boom's negligence causes injury to the child.
The general common law rule in Kentucky is that "parents ha[ve] no right to compromise or settle" their child's cause of action as that "right exist[s] in the child alone," and parents have no right to enter into contracts on behalf of their children absent special circumstances. Meyer's Adm'r v. Zoll, 119 Ky. 480, 486, 84 S.W. 543, 544 (1905) ; see also Wilson v. Wilson, 251 Ky. 522, 525, 65 S.W.2d 694, 695 (1933) ("[W]hile the mother might enter into a contract regarding her rights, she could not contract away the rights of her unborn child[ ]"); GGNSC Stanford, LLC v. Rowe, 388 S.W.3d 117, 123 (Ky. App. 2012) ("In light of the limited authority granted to custodians by KRS[6] 405.020 and KRS 387.280, we cannot conclude they are permitted to contractually bind their wards without formal appointment as guardians[ ]"). Thus, we must determine whether Kentucky public policy supports a change in the common law that would protect for-profit entities from liability by enforcing pre-injury liability waivers signed by parents on behalf of their children. First, KRS 405.020 provides that "[t]he father and mother shall have the joint custody, nurture, and education of their children who are under the age of eighteen (18)." However, this grant of custody and a parent's right to raise their child, choose the child's educational path, and make healthcare decisions on a child's behalf has never abrogated the traditional common law view that parents have no authority to enter into contracts on behalf of their child when dealing with a child's property rights, prior to being appointed guardian by a district court. Scott v. Montgomery Traders Bank & Trust Co., 956 S.W.2d 902, 904 (Ky. 1997).
In Scott, the parent at issue attempted to settle her child's tort claim and *661 fund a trust with the settlement funds without being appointed guardian by a district court. Id. This Court held that
[i]t is fundamental legal knowledge in this state that District Court has exclusive jurisdiction "... for the appointment and removal of guardians ... and for the management and settlement of their accounts" and that a person must be appointed as guardian by the Court in order to legally receive settlements in excess of $ 10,000.00.
Id. (quoting KRS 387.020(1), KRS 387.125(b) ) (emphasis added). Additionally, our precedent dictates that even when acting as next friend, a minor's parent has no right to compromise or settle a minor's claim without court approval or collect the proceeds of a minor's claim.[7] Metzger Bros. v. Watson's Guardian, 251 Ky. 446, 450, 65 S.W.2d 460, 462 (1933). Thus, finding no inherent right on the part of a parent to contract on behalf of their child, the remaining question is whether public policy demands enforcement of these contracts within the Commonwealth.
House of Boom's initial public policy argument is that a parent's fundamental liberty interest "in the care and custody of their children" supports enforcing a for-profit entity's pre-injury liability waiver signed by a parent on behalf of a minor child. Morgan v. Getter, 441 S.W.3d 94, 112 (Ky. 2014) (citing Troxel v. Granville, 530 U.S. 57, 65, 120 S. Ct. 2054, 2060, 147 L. Ed. 2d 49 (2000)) ("The liberty interest ... of parents in the care, custody, and control of their children-is perhaps the oldest of the fundamental liberty interests recognized by this Court[ ]"). Although this Court recognizes a parent's fundamental liberty interest in the rearing of one's child, this right is not absolute, and the Commonwealth may step in as parens patriae[8] to protect the best interests of the child. See Hojnowski, 901 A.2d at 390 ("the question whether a parent may release a minor's future tort claims implicates wider public policy concerns and the parens patriae duty to protect the best interests of children[ ]"); see also Cooper, 48 P.3d at 1235 n. 11 (parental release of child's right to sue for negligence is "not of the same character and quality as those rights recognized as implicating parents' fundamental liberty interest in the 'care, custody and control' of their children[ ]"). House of Boom argues that the parens patriae doctrine "is difficult to defend in a post- Troxel world." However, if Troxel is read to grant parents the decision to enter into pre-injury liability waivers, then, logically, our court-appointed guardian statutes and statutes restricting a parent's ability to settle claims post-injury would also infringe upon a parent's fundamental liberty interest. As litigation restrictions upon parents have remained a vital piece of our Commonwealth's civil practice and procedure, we do not recognize a parent's fundamental liberty interest to quash their child's potential tort claim.
*662 House of Boom next argues that public policy concerns surrounding post-injury settlements between parents and defendants are not present when a parent is signing a pre-injury release waiver (signing in the present case being checking a box on an I phone), and therefore, the state only needs to step in to protect the child post-injury, not pre-injury. First, we note that since Meyer's Adm'r and Metzger Bros., this Court and the legislature have protected minor's rights to civil claims. See KRS 387.280. Indeed, "children deserve as much protection from the improvident compromise of their rights before an injury occurs [as our common law and statutory schemes] afford[ ] them after the injury." Hojnowski, 901 A.2d at 387. As summarized in Hawkins, 37 P.3d at 1066,
[w]e see little reason to base the validity of a parent's contractual release of a minor's claim on the timing of an injury. Indeed, the law generally treats preinjury releases or indemnity provisions with greater suspicion than postinjury releases. See Shell Oil Co. v. Brinkerhoff-Signal Drilling Co., 658 P.2d 1187, 1189 (Utah 1983). An exculpatory clause that relieves a party from future liability may remove an important incentive to act with reasonable care. These clauses are also routinely imposed in a unilateral manner without any genuine bargaining or opportunity to pay a fee for insurance. The party demanding adherence to an exculpatory clause simply evades the necessity of liability coverage and then shifts the full burden of risk of harm to the other party. Compromise of an existing claim, however, relates to negligence that has already taken place and is subject to measurable damages. Such releases involve actual negotiations concerning ascertained rights and liabilities. Thus, if anything, the policies relating to restrictions on a parent's right to compromise an existing claim apply with even greater force in the preinjury, exculpatory clause scenario.
The public policy reasons for protecting a child's civil claim pre-injury are no less present than they are post-injury, and we are unpersuaded by House of Boom's arguments to the contrary.
Lastly, House of Boom argues that enforcing a waiver signed by a parent on behalf of a child to enter a for-profit trampoline park furthers the public policy of encouraging affordable recreational activities. In making this argument, House of Boom relies on the decisions of states that have enforced these waivers between a parent and a non-commercial entity. Granted, this Commonwealth has similar public policy to these jurisdictions to "encourage wholesome recreation for boys and girls" and to limit liability for those volunteering, in a variety of ways, to increase recreational and community activities across the Commonwealth. Wilson v. Graves Cty. Bd. Of Educ., 307 Ky. 203, 206, 210 S.W.2d 350, 351 (1948) ; see also KRS 162.055 (granting limited immunity to school districts for allowing the public to use school grounds for "recreation, sport, academic, literary, artistic, or community uses"); KRS 411.190(2) ("[t]he purpose of this section is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes[ ]"). However, the same public policy implications that apply when dealing with the voluntary opening of private property or a school district's limited immunity allowing community use of school property do not apply when dealing with a commercial entity.
A commercial entity has the ability to purchase insurance and spread the cost between its customers. It also has the ability to train its employees and inspect the business for unsafe conditions. A child *663 has no similar ability to protect himself from the negligence of others within the confines of a commercial establishment. "If pre-injury releases were permitted for commercial establishments, the incentive to take reasonable precautions to protect the safety of minor children would be removed." Kirton, 997 So.2d at 358. Accordingly, no public policy exists to support House of Boom's affordable recreational activities argument in the context of a commercial activity.[9]
III. Conclusion.
Under the common law of this Commonwealth, absent special circumstances, a parent has no authority to enter into contracts on a child's behalf. Based upon our extensive research and review of the relevant policy in this Commonwealth and the nation as a whole, we find no relevant public policy to justify abrogating the common law to enforce an exculpatory agreement between a for-profit entity and a parent on behalf of her minor child.[10] Simply put, the statutes of the General Assembly and decisions of this Court reflect no public policy shielding the operators of for-profit trampoline parks from liability.
All sitting. All concur.

Maryland's highest court is the only judicial body to enforce these waivers when one of the parties is a for-profit entity. However, Maryland's court rules allow parents to "make decisions to terminate tort claims" without "judicial interference." BJ's Wholesale Club Inc. v. Rosen, 435 Md. 714, 80 A.3d 345, 356-57 (2013) (citing Md. Code Ann. § 6-205). Kentucky does not have a similar provision in our court rules, statutes, or judicial decisions.

See Kelly v. United States, 809 F. Supp.2d 429, 437 (E.D. N.C. 2011) (waiver enforceable as it allowed plaintiff to "participate in a school-sponsored enrichment program that was extracurricular and voluntary[ ]"); Hohe v. San Diego Unified Sch. Dist., 224 Cal.App.3d 1559, 274 Cal. Rptr. 647, 649-50 (1990) (upholding a pre-injury release executed by a father on behalf of his minor child which waived claims resulting from an injury during a school sponsored activity); Sharon v. City of Newton, 437 Mass. 99, 769 N.E.2d 738, 747 (2002) (upholding a public school extracurricular sports activities waiver signed by a parent on behalf of a minor); Zivich v. Mentor Soccer Club, Inc., 82 Ohio St.3d 367, 696 N.E.2d 201, 205 (1998) (holding that public policy supporting limiting liability of volunteer coaches and landowners who open their land to the public "justif[ied] giving parents authority to enter into [pre-injury liability waivers] on behalf of their minor children[ ]").

See In re Complaint of Royal Caribbean Cruises Ltd., 403 F. Supp.2d 1168, 1172-73 (S.D. Fla. 2005) (where "a release of liability is signed on behalf of a minor child for an activity run by a for-profit business, outside of a school or community setting, the release is typically unenforceable against the minor[ ]"); Simmons v. Parkette Nat'l Gymnastic Training Ctr., 670 F. Supp. 140, 144 (E.D. Pa. 1987) (invalidating a pre-injury release waiver signed by a parent in adherence with the "common law rule that minors, with certain exceptions, may disaffirm their contracts [based on] the public policy concern that minors should not be bound by mistakes resulting from their immaturity or the overbearance of unscrupulous adults[ ]"); Cooper v. Aspen Skiing Co., 48 P.3d 1229, 1237 (Colo. 2002) ("[T]o allow a parent to release a child's possible future claims for injury caused by negligence may as a practical matter leave the minor in an unacceptably precarious position with no recourse, no parental support, and no method to support himself or care for his injury[ ]"), superseded by statute, Colo. Rev. Stat. § 13-22-107(3) ; Kirton v. Fields, 997 So.2d 349, 358 (Fla. 2008) (invalidating agreement between parent and for-profit ATV park, but limiting the holding to "injuries resulting from participation in a commercial activity[ ]"); Meyer v. Naperville Manner, Inc., 262 Ill.App.3d 141, 199 Ill.Dec. 572, 634 N.E.2d 411, 414 (1994) (invalidating waiver between parent and for-profit horse riding stable); Woodman ex rel. Woodman v. Kera LLC, 486 Mich. 228, 785 N.W.2d 1, 16 (2010) (holding, in a case against a for-profit inflatable play area, that state common law indicated that enforcement of a waiver signed by parent was "contrary to the established public policy of this state" and that the legislature is better equipped for such a change in the common law); Hojnowski v. Vans Skate Park, 187 N.J. 323, 901 A.2d 381, 386 (2006) ("the public policy of New Jersey prohibits a parent of a minor child from releasing a minor child's potential tort claims arising out of the use of a commercial recreational facility[ ]"); Ohio Cas. Ins. Co. v. Mallison, 223 Or. 406, 354 P.2d 800, 802 (1960) (invalidating an indemnity provision in a settlement agreement-after settlement the child sustained further injury-in part because a parent's duty to act "for the benefit of his child [is] not fully discharged where the parent enters into a bargain which gives rise to conflicting interests[ ]"); Blackwell v. Sky High Sports Nashville Operations, LLC, 523 S.W.3d 624, 651 (Tenn. Ct. App. 2017) (in holding a parent-signed waiver unenforceable, the court held that Tennessee had no public policy supporting the "desire to shield the operators of for-profit trampoline parks from liability[ ]"); Munoz v. II Jaz Inc., 863 S.W.2d 207, 210 (Tex. App. 1993) ("in light of this state's long-standing policy to protect minor children, the language, 'decisions of substantial legal significance' in section 12.04(7) of the Family Code cannot be interpreted as empowering the parents to waive the rights of a minor child to sue for personal injuries[ ]"); Hawkins v. Peart, 37 P.3d 1062, 1066 (Utah 2001) (concluding that "a parent does not have the authority to release a child's claims before an injury"); Scott v. Pac. W. Mountain Resort, 119 Wash.2d 484, 834 P.2d 6, 11-12 (1992) ("Since a parent generally may not release a child's cause of action after injury, it makes little, if any, sense to conclude a parent has the authority to release a child's cause of action prior to an injury[ ]").

See Fedor v. Mauwehu Council, Boy Scouts of America, Inc., 21 Conn.Supp. 38, 143 A.2d 466, 468-69 (1958) (invalidating a waiver signed by a child's parents allowing the child to attend Boy Scout camp); Galloway v. State, 790 N.W.2d 252, 259 (Iowa 2010) (invalidating a pre-injury release waiver signed by a parent on behalf of a child attending a school sponsored field trip because of Iowa's "strong public policy favoring the protection of children's legal rights").

While a slight majority of jurisdictions support enforceability in the context of a non-profit recreational activity, non-profits and volunteer youth sports raise different public policy concerns which we need not address in this opinion today.

Kentucky Revised Statutes.

The legislature has sought fit to slightly change this portion of the common law and has authorized parents to receive funds less than $ 10,000, but those settlements must be approved by a court before the funds may be paid to a parent in custody of a child. KRS 387,280. Thus, a parent, based merely on custody, still maintains no right to negotiate a settlement on behalf of their child.

See Parens Patriae, Black's Law Dictionary (10th. ed 2014) ("The state regarded as a sovereign; the state in its capacity as provider of protection to those unable to care for themselves"); see also KRS 600,010(2)(a) (the Commonwealth should "direct its efforts to promoting protection of children"); Giuliani v. Guiler, 951 S.W.2d 318, 319 (Ky. 1997) (relevant public policy existed to support the enlargement of children's legal rights under the common law derived from KRS 600,010(2)(a)'s directive to protect children).

As previously noted, the question of whether public policy exists to require enforcement of parent-signed, pre-injury waivers in a non-commercial context is not before this Court today, and thus we make no determination on the issue.

House of Boom retains the ability to urge change in the common law by petitioning the General Assembly to enact a statute that supports a parent's ability to waive their child's legal rights. See Alaska Stat. § 09.65.292 (2004) ("a parent may, on behalf of the parent's child, release or waive the child's prospective claim for negligence against the provider of a sports or recreational activity in which the child participates to the extent that the activities to which the waiver applies are clearly and conspicuously set out in the written waiver and to the extent the waiver is otherwise valid. The release or waiver must be in writing and shall be signed by the child's parent[ ]"); Colo. Rev. Stat. § 13-22-107(3) (2003) ("A parent of a child may, on behalf of the child, release or waive the child's prospective claim for negligence[ ]").